Wisconsin Department of Employment Relations and Board of Regents of the University of Wisconsin System, Petitioners-Respondents,

v.

Wisconsin State Building Trades Negotiating Committee and its Appropriate Affiliated Building Trades Councils, Respondents-Appellants.†

Court of Appeals

*No. 02–2232. Submitted on briefs February 7, 2003.—
Decided July 10, 2003.*

2003 WI App 178

(Also reported in 669 N.W.2d 499.)

---

† Petition to review denied 11-17-03.

---

On behalf of the respondents-appellants, the cause was submitted on the briefs of *Matthew R. Robbins* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.*, Milwaukee.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *David C. Rice*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Dykman, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. The Wisconsin State Building Trades Negotiating Committee, an AFL-CIO affiliate which represents all "craft employees"[1] employed by the State, appeals a circuit court order that vacated a grievance arbitration award in its favor. The union had grieved what it believed to be a violation of its collective bargaining agreement with the State stemming from a decision by management personnel at the University of Wisconsin—Stout to convert a building trades position (Sheet Metal Worker) to that of Maintenance Mechanic 3–HVAC, a position in a bargaining unit represented by a different union (AFSCME).

¶ 2. Although the arbitrator concluded that the State had "reallocated" the position, which is a non-bargainable personnel action reserved to the State by both statute and the parties' contract, he nonetheless determined that the reallocation "had the effect of undermining" the union in violation of the bargaining agreement. Accordingly, the arbitrator ordered the State to "cease and desist from assigning Sheet Metal Worker duties/work to the Maintenance Mechanic 3–HVAC or other non-bargaining unit position."

¶ 3. The State petitioned the Dane County Circuit Court for an order under WIS. STAT. § 788.10 (2001–02)[2] vacating the arbitration award. The circuit court entered such an order, concluding that because state "statutes and the contract prohibit the State and the Union from bargaining about reallocations . . . the arbitrator exceeded his authority in issuing the award."

---

[1] " 'Craft employee' means a skilled journeyman craftsman, including the skilled journeyman craftsman's apprentices and helpers, but shall not include employees not in direct line of progression in the craft." WIS. STAT. § 111.81(4).

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

The union claims the circuit court erred and that we must restore the arbitrator's award because his interpretation of the parties' contract was reasonable, consistent with applicable statutes and entitled to judicial deference. We reject the union's arguments and affirm the order vacating the arbitration award.

## BACKGROUND

¶ 4. The principal question presented by this appeal is a legal one: Did the arbitrator exceed his authority in making the challenged award? Although the parties disagree as to some of the inferences that may be drawn from the facts that led them to grievance arbitration, we are satisfied that the facts material to our disposition are not disputed. The following summary is taken largely from the arbitrator's decision.

¶ 5. A fifteen-year employee of the University of Wisconsin—Stout informed his supervisor of his intention to retire. He was classified a Sheet Metal Worker and belonged to a bargaining unit covered by a collective bargaining agreement between the State and the union. The supervisor asked Stout's human resources manager if the impending vacancy could be posted and filled as a Maintenance Mechanic 3 position instead of that of Sheet Metal Worker. After determining that "Maintenance Mechanics [at other campuses] were performing the same kind of duties" as the retiring employee, the manager authorized posting the vacancy as one for a Maintenance Mechanic 3–HVAC.

¶ 6. The manager made some minor modifications to the pertinent job description before posting the vacancy under the new designation. The person hired under the new job title became a member of the "Blue Collar and Non-Building Trades" bargaining unit, rep-

resented by a different union. The appellant Building Trades union filed a grievance challenging the posting of the position as that of Maintenance Mechanic 3–HVAC. Thereafter, because no employee had sought an "internal or external transfer" to the new position, Stout pursued a "full recruitment." As part of that process, the supervisor and manager developed a new, modified position description. The arbitrator characterized the additional changes made to the position description at this time as "significant," and he noted that the manager had testified the changes were made in part because of requests from the "UW System" and the Department of Employment Relations, whose representatives told the manager they "basically didn't think it looked right to use what had been [the previous] job description as a sheet metal worker, but now call it a maintenance mechanic 3–HVAC."

¶ 7. The union maintained in its grievance that, despite the reallocation of the position to a different classification, the duties of the position remained essentially unchanged and consisted primarily of "work falling within the sheet metal trade." The union argued that if the State were permitted to do what it did in this case, "it could systematically deplete the building trades bargaining unit by simply drawing up a non-craft position description that includes the duties of a craft." Accordingly, in the union's view, the State violated the following provisions of the collective bargaining agreement:

## ARTICLE II

### Recognition and Union Security

. . . .

The Employer recognizes the Union as the exclusive collective bargaining agent for all Craft employees as listed below:

... Sheet Metal Worker

. . . .

## ARTICLE III

## Management Rights

. . . .

F. ... [T]he provisions of this Article shall not be used for the purpose of undermining the Union . . . .

¶ 8. In response, the State argued that under both statute and contract provisions, the "allocation and reallocation of positions to classifications" are not bargainable, and therefore, its actions in this case could neither be grieved nor arbitrated.[3] It also maintained that the duties of the position at issue were more appropriately classified as those of Maintenance Mechanic 3–HVAC, with "only 10%-15%" of the duties being similar to those of a sheet metal worker.

¶ 9. The arbitrator determined that what the State had done was to "reallocate" the position at issue from one classification to another. He also acknowl-

---

[3] WISCONSIN STAT. § 111.91(2)(b)2 provides that the State is prohibited from bargaining on "[p]olicies, practices and procedures of the civil service merit system relating to ... position classification and reclassification, position qualification standards, establishment and abolition of classifications, and allocation and reallocation of positions to classifications; and the determination of an incumbent's status, other than pay status, resulting from position reallocations." The "Management Rights" Article of the parties' collective bargaining agreement includes a similarly worded prohibition.

edged that "both the statutes and the contract prohibit the State and Union from bargaining about reallocations." The arbitrator concluded, however, that even if the State was free to unilaterally accomplish the reallocation, the action's effect was to "undermin[e]" the union, "emasculating Article II, Recognition and Union Security" by permitting bargaining unit work to be transferred to a non-bargaining unit position, in violation of the parties' collective bargaining agreement. Thus, in the arbitrator's view, even if the reallocation decision itself could not be grieved and arbitrated, "the effect(s) of the reallocation" were indeed arbitrable because those effects resulted in a contract violation.

¶ 10. The arbitrator then turned to the merits of the dispute, which he characterized as "whether the State's decision to reallocate [the] position to a classification in a non-craft bargaining unit and assigning the duties to a non-craft[]-bargaining unit employee was justified." He found from the evidence presented during arbitration that "it is clear there was and is sheet metal work/duties being performed" by the employee holding the position. The arbitrator did not find that the State's defense "that only 10–15% of the work orders involve sheet metal work" was not supported by the evidence before him, but he nonetheless rejected the defense:

> If that defense is accepted, the logic would, as the Union argues, potentially lead to elimination of a craft position any time the percentage of work performed involving duties normally associated with the particular craft fell below 50% of the hours of a full-time position. Also, flowing from that logic would be the conclusion that a non-craft worker can perform craft work so long as he/she does not spend more than 50% of his/her time performing those duties.

519

¶ 11. Based on the foregoing, the arbitrator concluded "that the State's actions herein have undermined the Union" because "[c]raft bargaining unit work was assigned to a non-bargaining unit employee under the guise/subterfuge of reallocation." Acknowledging that he had no "authority to order the State to undo the reallocation which was an exercise of its statutory authority to reallocate a position to another classification," the arbitrator ordered that "the State must cease and desist assigning duties/work generally understood/accepted as Sheet Metal Worker duties/work to the Maintenance Mechanic 3–HVAC or other non-bargaining unit position."

¶ 12. The State petitioned the Dane County Circuit Court for an order vacating the arbitration award under Wis. Stat. § 788.10 on the grounds that the arbitrator had exceeded his powers, manifestly disregarded the law and perversely misconstrued the parties' contract. The court concluded that "the reallocation in question was not arbitrable and that [the] arbitrator exceeded his power and ignored applicable law in making the award." It entered an order vacating the arbitrator's award and the union appeals.

## ANALYSIS

¶ 13. We first note that the State's reallocation of the Sheet Metal Worker position to that of Maintenance Mechanic 3–HVAC does not result in the position becoming unrepresented. Future occupants of the position in question will retain membership in a collective bargaining unit—just not the unit represented by the Building Trades union. The present dispute is thus not one regarding whether a position should remain within the coverage of public employee collective bargaining laws, such as may occur when the employer asserts that

520

a position should be removed from a bargaining unit because of managerial or "confidential" duties. *See* Wis. Stat. § 111.81(7)(a). Rather, this appeal involves a "turf battle" over which union will represent an employee who performs certain tasks.

¶ 14. Under the parties' collective bargaining agreement, the union possesses rights apart from those of its members, and the contract acknowledges the union's right to protect its "turf." For example, the parties' contract expressly recognizes the rights of the union "as the exclusive collective bargaining agent for all Craft employees." It also prohibits the State from using its management rights "for the purpose of undermining the Union." The arbitrator was asked to decide whether the State's action in reallocating the position violated these contractual provisions. We must decide in this appeal whether to uphold or vacate the arbitrator's decision concluding that the union's contractual rights were violated and ordering a remedy.

¶ 15. We also note at the outset that we will *not* address whether the State's action in reallocating the position at issue was proper. The parties agree (as did the arbitrator) that the forum for resolving that issue is the Wisconsin Personnel Commission. *See* Wis. Stat. § 230.44(1)(b). We were initially concerned as to whether the union could have challenged the reallocation decision before the commission in its own right, absent a challenge by one of its members.[4] The record before us, however, includes a copy of a commission decision that suggests the commission would entertain a complaint lodged solely by a union challenging the

---

[4] *See, e.g.,* Wis. Stat. § 230.44(4)(bm) (*"Upon request of an employee* who files an appeal of the decision of the secretary [of the Department of Employee Relations] made under s. 230.09(2)(a) . . . .") (emphasis added).

521

reallocation of a position out of one of its bargaining units.[5] Additionally, we note that the union does not dispute the State's assertion that it could have challenged the reallocation before the personnel commission. The union argues only that the commission "does not have exclusive jurisdiction" to hear claims "concerning the *effect* of reallocation decisions." (Emphasis added.)

¶ 16. The union did not challenge the reallocation before the personnel commission, however, and we thus have no basis for reviewing whether the position at issue was properly reallocated from Sheet Metal Worker to Maintenance Mechanic 3–HVAC. We therefore do not address the "majority of duties test" or any other standards for determining proper classifications or allocations of positions within the State classified service. Again, what we must decide, and the only thing we must decide, is whether the arbitrator exceeded his authority in ordering the remedy he did to redress the union's loss of the position at issue to another bargaining unit. We turn to this issue.

¶ 17. Under Wis. Stat. § 788.10(1)(d), a court "must" vacate an arbitration award if it concludes that an arbitrator has "exceeded [his or her] powers." On an

---

[5] *See Bricklayers & Allied Craftsmen Union No. 8 v. DHSS,* No. 81–367–PC (Pers. Comm., 5/28/82) (concluding that "the union has standing to request the reclassification of its member's position" and to obtain "declaratory, injunctive or other prospective relief" but not "individualized damages or back pay"). We do not consider whether a union may object before the personnel commission to a reallocation or reclassification which the affected employee requests or actively supports. Here, the reallocation occurred when the position at issue was vacant.

appeal of an order vacating an arbitration award, our scope of review is the same as the circuit court's, and "[w]e review the arbitrators award without deference to the trial court's decision." *City of Madison v. Local 311, Int'l Ass'n of Firefighters*, 133 Wis. 2d 186, 190, 394 N.W.2d 766 (Ct. App. 1986). In determining "whether the award of the arbitrator was outside the scope of [the arbitrators] authority and contrary to law," we begin with a presumption that the award is valid, and we will set it aside only if "its invalidity is demonstrated by clear and convincing evidence." *Whitewater Educ. Ass'n v. Whitewater Unified Sch. Dist.*, 113 Wis. 2d 151, 157, 335 N.W.2d 408 (Ct. App. 1983).

██

¶ 18. When deciding disputes which involve only an arbitrator's contract interpretation during grievance arbitration and not the arbitrability of the dispute, courts generally take a deferential, "hands off" approach, in part because "the parties have contracted for binding arbitration of grievances in an existing contract." *See La Crosse Prof'l Police Ass'n v. City of La Crosse*, 212 Wis. 2d 90, 98, 568 N.W.2d 20 (Ct. App. 1997). Specifically:

> [T]he court will not overturn the arbitrator's decision for mere errors of law or fact, but only when "perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." These narrow grounds for overturning an arbitrator's award are echoed in the controlling statute on arbitration, [WIS. STAT. §] 788.10 . . . and especially in [§] 788.10(1)(d).

*City of Madison v. Madison Prof'l Police Officers Ass'n*, 144 Wis. 2d 576, 586, 425 N.W.2d 8 (1988) (citations omitted). The issue before us is whether the arbitrator's

award in this case comes within one of these "narrow grounds for overturning an arbitrator's award." *Id.*

¶ 19. The issue of an arbitrator's authority to arbitrate a specific dispute often involves a question of law which is appropriately decided by a court de novo, with no deference owed the arbitrator's conclusion regarding his or her own authority. *See Glendale Prof'l Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 98–101, 264 N.W.2d 594 (1978); *cf. City of Madison v. WERC*, 2003 WI 52, ¶¶ 9–10, 261 Wis. 2d 423, 662 N.W.2d 318. We conclude that the dispute before us falls in this category, and we decide de novo the question of whether the arbitrator exceeded his authority because his award conflicts with state statutes.[6]

¶ 20. With these principles in mind, we now consider the State's challenge to the validity of the award before us. The State contends that the arbitrator ex-

---

[6] Even though the arbitrator was appointed by the Wisconsin Employment Relations Commission (and was a member of its staff), our review is of the arbitrator's award, not an agency decision. Thus, WIS. STAT. § 788.10(1) and not WIS. STAT. § 227.57 applies to this dispute. *See Glendale Prof'l Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 100–01, 264 N.W.2d 594 (1978). *Glendale* involved a predecessor statute whose wording was substantially the same as the present § 788.10(1)(d).

We also note that the State asserts that "the parties did not agree that the arbitrator's initial determination on substantive arbitrability was to be final and binding." The union does not dispute this assertion in its reply brief. *See City of Madison v. WERC*, 2003 WI 52, ¶ 11, 261 Wis. 2d 423, 662 N.W.2d 318 ("Where a party has 'challenged the arbitrability of [a] question and reserved the right to challenge in court an adverse ruling on arbitrability, the court [will] decide the issue of arbitrability de novo.' " (citation omitted)).

ceeded his authority because position classification and allocation decisions, which it claims go to "maintaining the integrity" of its civil service classification system, are reserved solely to it by statute. Moreover, in the State's view, the effects of classification and allocation decisions, with certain limited exceptions recognized by statute, are not bargainable and thus are not redressable through grievance arbitration under a collective bargaining agreement. According to the State, the arbitrator's award prohibiting it from assigning certain duties to the reallocated position undermines its exclusive statutory authority, recognized in the parties' contract, to structure its workforce pursuant to the civil service statutes. The State asserts that the personnel commission is the exclusive forum for addressing and redressing improper allocation or classification decisions, and that the arbitrator's decision thus violates both law and public policy. We agree with the State (and the circuit court) that the challenged award suffers from precisely these infirmities.

¶ 21. "The relationship between public sector bargaining agreements and other statutes governing terms and conditions of employment can be one of the most difficult issues in public sector labor law." *Glendale Prof'l Policemen's Ass'n*, 83 Wis. 2d at 105; *City of Madison*, 261 Wis. 2d 423, ¶ 34 (Abrahamson, C.J., dissenting). The principal "other statute" at issue in this case is Wis. Stat. § 111.91(2)(b)2, which provides in relevant part that the State is prohibited from bargaining with its employees regarding:

> The job evaluation system specifically including position classification and reclassification, position qualification standards, establishment and abolition of classifications, and allocation and reallocation of positions to classifications; and the determination of an

525

incumbent's status, other than pay status, resulting from position reallocations.

The parties' contract repeats the statutory prohibition, virtually verbatim, in Article III, "Management Rights."

■

¶ 22. Also implicated in this appeal are statutes which assign to the personnel commission the authority and responsibility to hear disputes regarding the classification and allocation of positions in the state civil service.[7] Under Wis. Stat. § 230.44(1)(b), these personnel actions are "appealable" to the personnel commission, which must conduct a hearing (or, at the employee's option, arbitration) and "either affirm, modify or reject the action which is the subject of the appeal," issuing "an enforceable order" to the responsible official or agency. Section 230.44(4)(c). We agree with the State that the combination of Wis. Stat. §§ 111.91(2)(b)2 and 230.44 evince the legislature's intent to have "expert and uniform review of allocation and reallocation decisions by an agency specifically designated by the legislature to perform such reviews, rather than by *ad hoc* arbitrators who lack the agency's expertise." When the legislature enacts a comprehensive review mechanism and specific remedies regarding a particular governmental action, the statutory mechanism and remedies are generally exclusive absent a legislative indication to the contrary. *See Fazio v. De-*

---

[7] WISCONSIN STAT. § 230.09(2)(a) vests authority for classification and allocation decisions in the Secretary of the Department of Employee Relations. The secretary may, however, delegate this authority to an "appointing authority." *See* WIS. STAT. § 230.04(1m). The board of regents enjoys such a delegation, and it exercised the delegated authority in this case to reallocate the vacant position to a different classification.

*partment of Employee Trust Funds*, 2002 WI App 127, ¶ 11, 255 Wis. 2d 801, 645 N.W.2d 618 ("Generally, where a statute sets forth a procedure for review of an administrative action and for judicial review of the administrative decision, the courts will consider that remedy exclusive . . . .").

¶ 23. The arbitrator in this case disavowed any intention of supplanting the personnel commission by ordering the position reallocation set aside. We agree with the State, however, that the award effectively does just that. By ordering the State to assign no sheet metal worker duties whatsoever to the reallocated position, the arbitrator has injected himself squarely into the classification/allocation process by decreeing duties which may and may not be performed by specific positions. The award thus strikes at the very heart of the state job classification and allocation system, one of whose purposes is the creation of logical groupings of duties and responsibilities for positions in the state classified service.[8] The award removes necessary flexibility from the system by impairing the State's ability to efficiently structure its work force by responding appropriately to changes in a position's duties and responsibilities.[9]

---

[8] *See, e.g.,* Wis. Stat. § 230.09(1), (2)(a) and (am) (directing the Secretary of Department of Employee Relations to, among other things, classify and allocate positions such that each classification includes all positions of comparable "authority, responsibility and nature of work required," to include in each classification "as many positions as are reasonable and practicable," and to "reclassify or reallocate positions" as "the needs of the service require").

[9] *See* Wis. Stat. § 230.01(1) (stating legislative purpose "to provide state agencies and institutions of higher education with competent personnel who will furnish state services to citizens

¶ 24. The union argues, however, that another statute, WIS. STAT. § 111.93(3), allows the *effects* of a reallocation decision to be grieved and arbitrated under the parties' collective bargaining agreement:

> Except as provided in [various statutes, *not* including WIS. STAT. § 111.91(2)(b)], *if a collective bargaining agreement exists* between the employer and a labor organization representing employees in a collective bargaining unit, *the provisions of that agreement shall supersede the provisions of civil service and other applicable statutes,* as well as rules and policies of the board of regents of the University of Wisconsin System, *related to wages, fringe benefits, hours, and conditions of employment* whether or not the matters contained in those statutes, rules, and policies are set forth in the collective bargaining agreement.

(Emphasis added.) The union contends that the issue in this case is "the removal of work from the bargaining unit," which it claims is a "condition[] of employment" governed by WIS. STAT. § 111.93(3). And, the union further argues that, because it is a condition of employment, the legislature has ordained the issue a mandatory subject of bargaining. *See* § 111.91(1)(a).

---

as fairly, efficiently and effectively as possible"); WIS. ADMIN. CODE § ER 3.01(2)(f) (" 'Reallocation' means the assignment of a position to a different class . . . based upon . . . [among other things a] logical change in the duties and responsibilities of a position."); WIS. ADMIN. CODE § ER 2.04(3):

> Class specifications shall not be construed to limit or modify the power of the appointing authority to assign tasks or direct or control the work or subordinate employe[e]s. The use of specific examples of work in a class specification shall not be held to exclude the assignment of other work not mentioned, nor is it implied that all stated examples of work must be performed by all employe[e]s whose positions are so classified or constitute an exhaustive or exclusive listing of work assignments.

¶ 25. The union points out that under WIS. STAT. § 111.91(2)(b)2, the statute on which the State primarily relies, the legislature has identified as a prohibited bargaining subject not only the "allocation and reallocation" of positions but also "the determination of an incumbent's status, other than pay status, resulting from position reallocations." The union argues that by singling out just one effect of a reallocation—determination of an incumbent's status—as a prohibited bargaining subject, the legislature intends that all other effects flowing from reallocations are bargainable. The union claims additional support for its interpretation in the language of § 111.91(1)(a), which expressly permits "an incumbent's pay status resulting from position reallocation or reclassification" and "pay adjustments upon . . . downward reallocations of a classified employee's position" to be bargained.

¶ 26. In the union's view, the effect on the bargaining unit of losing work, like these other effects of a reallocation, are thus bargainable, grievable, and arbitrable, even if reallocation decisions themselves are not subject to bargaining or grievance arbitration. It urges us to "harmonize" the cited statutes as the arbitrator did, and as courts are instructed to do when faced with alleged or apparent conflicts between public sector bargaining statutes and other personnel relations statutes. *See Glendale Prof'l Policemen's Ass'n*, 83 Wis. 2d at 103–04. The union asserts that if we do not restore the arbitrator's award, the recognition clause in its collective bargaining agreement with the State will be rendered a "nullity," and the State will be free to "move all of the work under the labor agreement to positions outside the bargaining unit."

¶ 27. We are not persuaded by the union's arguments. First, we take issue with the union's assertion

that "the removal of work from the bargaining unit" is a "condition of employment" within the meaning of the statutes cited, such that the existence of the parties' collective bargaining agreement and the operation of Wis. Stat. § 111.93(3) serve to override the prohibition of Wis. Stat. § 111.91(2)(b). The term "conditions of employment" is not defined in Wis. Stat. ch. 111, but when used in the chapter, the term is linked with such terms as "wages," "rates of pay," "hours," "fringe benefits," "hiring," "promotion," "compensation" and "tenure." *See, e.g.,* Wis. Stat. §§ 111.32(9)(a), 111.375(1), 111.84(1)(c) and (e), and 111.93(2) and (3). The term "conditions of employment" thus generally connotes pay, benefits and other matters which directly affect the interests of employees.[10]

¶ 28. We conclude that matters which affect the separate and distinct interests of bargaining units or unions, such as the interest in not losing work to another unit or union, are not "conditions of employment" under Wis. Stat. § 111.93(3). The legislature has declared the policy of the State Employment Labor Relations Act to be the promotion and protection of three "major interests," and the interests of a union apart from those of its members is not among them. Wis. Stat. § 111.80(1) ("[T]here are 3 major interests

---

[10] *See also Madison Teachers, Inc., v. WERC,* 218 Wis. 2d 75, 88–89, 580 N.W.2d 375 (Ct. App. 1998) (noting that the parties in that case had agreed that "conditions of employment" included " 'matters such as the quality and safety of the work environment, the work load for the time allotted, the stressfulness of assignments, and the potential for disciplinary problems with students' "); *id.* at 88 n.3 (noting other items that have been determined to be "conditions of employment").

involved: that of the public, that of the employee and that of the employer."). Thus, although the State is free to contractually recognize the union as the bargaining agent for certain employees, and to agree to not exercise its management rights "for the purpose of undermining the union," we discern no legislative intent to allow the express prohibition of WIS. STAT. § 111.91(2)(b)2 to be overridden by permitting "the loss of bargaining unit work" on account of a position reallocation to be bargained, grieved or arbitrated. Rather, we agree with the State that the legislature's express inclusion in § 111.91(1)(a) of the "determination of an incumbent's pay status resulting from position reallocation" and "pay adjustments upon . . . downward reallocations" as bargainable subjects means that these are the only "effects" of reallocation decisions that the legislature intends to be bargainable, grievable and arbitrable.

¶ 29. In summary, we conclude that the legislature does not intend that arbitrators be permitted to enter orders such as the one before us. An order prohibiting the State from assigning certain work to certain positions undermines the statutory authority of the Secretary of the Department of Employee Relations, or his or her designees, to reclassify and reallocate positions (see footnote 8). The legislature has removed position classification and allocation decisions from the realm of collective bargaining and has designated the personnel commission as the reviewing authority to ensure that the State properly exercises its authority in these matters. Accordingly, the arbitrator exceeded his authority in making the challenged award and the circuit court properly ordered it vacated.

¶ 30. Our conclusion that the arbitrator exceeded his authority in making the present award does not mean that the union is without means to redress

violations of its contractual rights to recognition and to be free of purposeful efforts by the State to undermine its interests.[11] As we have discussed, the union, either independently or joined with one or more of its members, may challenge a reallocation before the personnel commission, and the commission, if it deems the action unjustified or improper, has the authority to set it aside. The parties' agreement also recognizes the union's ability to submit disagreements over whether "new unit classifications" should be included or excluded from its bargaining unit to the Wisconsin Employment Relations Commission (WERC) for "final resolution." Finally, WIS. STAT. § 111.84 affords the union the right to seek remedies from the WERC for any "unfair labor practice," including State interference with the "formation or administration" of the union, which would

---

[11] We note that the arbitrator did *not* find that the State's reallocation of the position was undertaken for "the purpose of undermining the union," only that the reallocation had that "effect." The State's witnesses testified that the reallocation was accomplished, after consultation with other campuses, in order to place the position in a classification more consistent with the overall work actually being performed. The union, to be sure, disputed whether the duties of the position justified the reallocation to the Maintenance Mechanic 3–HVAC classification, but it produced no evidence that the State acted out of ulterior motives. The previous incumbent Sheet Metal Worker had himself earlier sought this very change in classification, which, for reasons that are not altogether clear in the record, did not occur until after his retirement. There is no evidence in the arbitration record, however, of any ill will between the State and the union, of a retaliatory motive for reallocating the position, or of the State having engaged in a systematic effort to spirit positions away from this union to units represented by other unions.

seemingly encompass a claim that the State had reallocated positions "for the purpose of undermining the union." *See* § 111.84(1)(b).

## CONCLUSION

¶ 31. For the reasons discussed above, we affirm the circuit court's order vacating the arbitration award.

*By the Court.*—Order affirmed.