MILWAUKEE JOURNAL SENTINEL and Patrick Marley,
Plaintiffs-Respondents,

v.

WISCONSIN DEPARTMENT OF ADMINISTRATION and
Stephen E. Bablitch, Defendants,

AMERICAN FEDERATION OF STATE, MUNICIPAL AND
COUNTY EMPLOYEES, COUNCIL 24, Wisconsin State
Employees Union, Intervenor-Appellant.

LAKELAND TIMES and Gregg Walker,
Plaintiffs-Respondents,

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES and
Debra Martinelli, Defendants,

AMERICAN FEDERATION OF STATE, MUNICIPAL AND
COUNTY EMPLOYEES, COUNCIL 24, WISCONSIN STATE
EMPLOYEES UNION, Intervenor-Appellant,

WISCONSIN SCIENCE PROFESSIONALS, AFT LOCAL 3272
and Wisconsin Professional Employees Council,
Local 4848, AFT-Wisconsin, AFT, AFL-CIO,
Intervenors.

Supreme Court

*No. 2007AP1160. Oral argument April 15, 2009.*
*—Decided July 15, 2009.*

2009 WI 79

(Also reported in 768 N.W.2d 700.)

441

445

For the intervenor-appellants there were briefs (in the court of appeals) by *Kurt C. Kobelt* and *Lawton & Cates, S.C.*, Madison, and oral argument by *Kurt C. Kobelt*.

For the plaintiffs-respondents there were briefs (in the court of appeals) by *Jennifer L. Peterson, Robert J. Dreps,* and *Godfrey & Kahn S.C.*, Madison, and oral argument by *Robert J. Dreps*.

An amicus curiae brief was filed by *April Rockstead Barker* and *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay, on behalf of the American Legislative Exchange Counsel.

An amicus curiae brief was filed by *Lucy A. Dalglish*, Arlington, Va., and *Eric G. Barber* and *Perkins Coie LLP*, Madison, on behalf of the Reporters Committee for Freedom of the Press, American Society of Newspaper Editors, Associated Press, Radio-Television News Directors Association, Society of Professional Journalists, Wisconsin Broadcasters Association, Wisconsin Freedom of Information Council, and the Wisconsin Newspaper Association.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case comes to us on certification from the court of appeals. The certified questions are:

> (1) Whether courts have jurisdiction to review legislative action to determine if that action was sufficient to amend the Public Records Law; and

> (2) If so, whether the action taken by the legislature in ratifying a collective bargaining agreement between the Wisconsin State Employees Union (WSEU)[1] and the State of Wisconsin was sufficient to amend the Public Records Law.[2]

¶ 2. The court of appeals posed these questions in order to determine whether a provision in a ratified collective bargaining agreement, Article 2/4/4, between

[1] WSEU is a labor organization that represents approximately 21,000 employees of the State of Wisconsin, including 5,000 Department of Corrections employees and 1,200 parole agents.

[2] When we grant a certification, we acquire jurisdiction of the entire case, not merely the issues certified by the court of appeals. *State v. Stoehr*, 134 Wis. 2d 66, 70, 396 N.W.2d 177 (1986); *see also* Wis. Stat. § 808.05(2) (2005–06); Wis. Stat. § (Rule) 809.61 (2005–06). All further references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

447

the WSEU and the State, which purported to prohibit the disclosure to the press of the names of WSEU-represented employees, modified the Public Records Law, Wis. Stat. § 19.31 *et seq.*

¶ 3. We conclude that courts have jurisdiction to review whether the legislature's ratification of a collective bargaining agreement under Wis. Stat. § 111.92(1)(a), without introducing a companion bill to specifically amend the Public Records Law, is sufficient to effect a change in that law. We so conclude because courts have jurisdiction to determine the meaning of statutes, here § 111.92(1)(a), and of constitutional provisions, here Article IV, Section 17(2) of the Wisconsin Constitution.[3] We also conclude that ratification of the collective bargaining agreement was insufficient to amend the Public Records Law because Article 2/4/4 of the collective bargaining agreement was not "introduce[d] in a bill or companion bills" within the meaning of § 111.92(1)(a), as that meaning is driven by the requirements of Article IV, Section 17(2) of the Wisconsin Constitution. Accordingly, the ratification of the collective bargaining agreement did not create an exception to the Public Records Law. Additionally, we conclude that Wis. Stat. § 111.93(3) does not support WSEU's assertion that Article 2/4/4 supersedes the disclosure provision of the Public Records Law, Wis. Stat. § 19.35(1)(a).[4]

---

[3] Article IV, Section 17(2) of the Wisconsin Constitution states: "No law shall be enacted except by bill. No law shall be in force until published."

[4] The parties also dispute whether the language of Article 2/4/4, if it is capable of constituting an exception to the Public Records Law, unambiguously prohibits disclosure of the names in this case. If it is ambiguous, the newspapers argue that extrinsic evidence shows that it was not intended to prohibit the

¶ 4. Finally, we affirm the circuit court's application of the balancing test, which it appears the circuit court applied to the WSEU members as a group because that is how the issue was argued to the circuit court. However, we do not decide what our conclusion would be if, on remand, individual record subjects intervene and request the circuit court to apply the balancing test to them, individually.

## I. BACKGROUND

¶ 5. This case consists of two actions that were consolidated in the circuit court[5] due to the identity of the legal issues presented. In the first case, Patrick Marley, a reporter from the Milwaukee Journal Sentinel (Journal Sentinel), made an open records request to the Legislative Audit Bureau for the names of state employees who had been deactivated from the list of those permitted to drive state-owned vehicles. The Department of Administration (DOA) ultimately disclosed some of the requested names, but it refused to release the names of employees represented by WSEU. The DOA refused in part because of Article 2/4/4 of the

disclosure of WSEU-represented employees' names alone. The newspapers further argue that if Article 2/4/4 is allowed to operate as an exception to the Public Records Law, it will violate their equal protection and due process rights. Because we conclude that Article 2/4/4 is not an exception to the Public Records Law, we need not address these arguments. *Walgreen Co. v. City of Madison*, 2008 WI 80, ¶ 2, 311 Wis. 2d 158, 752 N.W.2d 687 (noting that when resolution of one issue is dispositive, we need not reach other issues raised by the parties); *Jankee v. Clark County*, 2000 WI 64, ¶ 105, 235 Wis. 2d 700, 612 N.W.2d 297 (same).

[5] The Honorable C. William Foust of Dane County Circuit Court presided over the consolidated action.

state's collective bargaining agreement with WSEU. Article 2/4/4 provides in relevant part:

> Notwithstanding the provisions of [§§] 19.31–19.36 and 230.13 Wis. Stats. and any applicable Federal laws, the Employer will not release any information relating to the names, addresses, classifications, social security numbers, home addresses or home telephone numbers of employees covered by this Agreement to labor unions, labor organizations, local unions or the press except for Council 24 and the local union treasurer for the purpose of local membership list, unless required to do so by the Wisconsin Employment Relations Commission or a court of law.[6]

In response to the DOA's withholding of the WSEU-represented employees' names, the Journal Sentinel commenced an action against the DOA, pursuant to Wis. Stat. § 19.37(1)(a),[7] seeking mandamus to order disclosure of the requested names.

¶ 6. In the second case, Gregg Walker, an editor for the Lakeland Times, made an open records request to the Department of Natural Resources (DNR) for the salary information of DNR's employees working at its Rhinelander and Woodruff facilities. The DNR provided the names and salary information of 127 of the relevant employees, but withheld the names of 95 others. The employees whose names were withheld were represented by three Unions, one of which was WSEU. As

---

[6] Wisconsin Stat. §§ 19.31 through 19.36 contain provisions of the Public Records Law.

[7] Wisconsin Stat. § 19.37(1)(a) provides in pertinent part: "If an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may pursue . . . an action for mandamus asking a court to order release of the record."

was the case in the first action, the DNR withheld the WSEU-represented employees' names pursuant to Article 2/4/4 of the collective bargaining agreement. In response, the Lakeland Times sued the DNR seeking mandamus to compel disclosure pursuant to Wis. Stat. § 19.37(1)(a).

¶ 7. WSEU and other unions[8] intervened, with WSEU's primary basis for intervening being the newspapers' challenge to the legal effect of Article 2/4/4 of the collective bargaining agreement. Since disclosure of the WSEU-represented employees' names in both cases depended on the legal effect of Article 2/4/4, the parties agreed to consolidate the actions.

¶ 8. After consolidation, the newspapers and WSEU filed cross-motions for summary judgment. In resolving these motions, the circuit court focused on the following three issues: (1) whether the legislature's ratification of the collective bargaining agreement, without introducing companion legislation, amended the Public Records Law; (2) if not, whether Wis. Stat. § 111.93(3) nevertheless caused Article 2/4/4 of the collective bargaining agreement to supersede the Public Records Law because precluding disclosure of the names of employees affected safety and therefore was a "condition of employment"; and (3) if not, whether the balancing test precluded disclosure.

¶ 9. The parties initially briefed and argued the first and second issues. On October 13, 2006, relying on the court of appeals' decision in *Board of Regents of the University of Wisconsin System v. Wisconsin Personnel Commission,* 103 Wis. 2d 545, 309 N.W.2d 366 (Ct. App. 1981), the circuit court concluded that the legislature's

---

[8] The other unions were the Wisconsin Science Professionals and the Wisconsin Professional Employees Council.

ratification of the collective bargaining agreement, without enacting companion legislation expressly amending the Public Records Law as required by Wis. Stat. § 111.92(1)(a), did not create an exception to the Public Records Law.

¶ 10. The circuit court reasoned that ratification of the collective bargaining agreement was insufficient to amend the Public Records Law because the Joint Committee on Employment Relations (JCOER) did not comply with the requirements of Wis. Stat. § 111.92(1)(a) that are necessary in order to amend an existing law. The court noted that § 111.92(1)(a) clearly requires JCOER to "introduce in a bill or companion bills . . . that portion of the tentative [collective bargaining] agreement which requires legislative action for implementation, such as . . . any proposed amendments, deletions or additions to existing law." Because JCOER took no such action, the legislature did not create an exception to the Public Records Law.

¶ 11. Regarding the second issue, the circuit court concluded that Article 2/4/4's prohibition on disclosure of the employees' names did not constitute a "condition of employment" under Wis. Stat. § 111.93(3); therefore, that contractual provision did not supersede the disclosure requirement of the Public Records Law, Wis. Stat. § 19.35(1)(a).

¶ 12. Because the circuit court concluded that ratification of the collective bargaining agreement did not cause Article 2/4/4 to become an exception to the Public Records Law, the parties briefed and argued application of the balancing test. The circuit court granted the newspapers' motions for summary judgment. The circuit court concluded that the public interests favoring disclosure set forth in Wis. Stat. § 19.32(1) outweighed any countervailing public inter-

ests in precluding disclosure. Accordingly, the circuit court issued mandamus ordering disclosure of the employees' names.[9]

¶ 13. The WSEU appealed.[10] The court of appeals certified the appeal, which we accepted pursuant to Wis. Stat. § 808.05(2).[11] We now affirm and remand to the circuit court. [12]

[9] In the circuit court's May 7, 2007 mandamus order, the circuit court also awarded the plaintiffs statutory damages, attorney fees and costs totaling $64,200 pursuant to Wis. Stat. § 19.37(2). This award is not part of the appeal before us.

[10] Neither the DOA, the DNR nor the other unions who intervened along with WSEU appealed the circuit court's decision.

[11] Wisconsin Stat. § 808.05(2) provides in relevant part: "The supreme court may take jurisdiction of an appeal or any other proceeding pending in the court of appeals if: . . . [i]t grants direct review upon certification from the court of appeals prior to the court of appeals hearing and deciding the matter . . . ."

[12] The procedural posture of this case is worth noting. Here, the newspapers' public records requests were denied by the record custodians (the DOA and DNR). This action was commenced pursuant to Wis. Stat. § 19.37(1)(a). Under § 19.37(1)(a), when a record request is denied by the record custodian, the requester is entitled to seek judicial review by pursuing mandamus to order disclosure of the records. *Id.*

Where a record request is granted—i.e., the record custodian determines that it will disclose the record and the person whose records are at issue (the record subject) opposes release of the records—the record subject proceeds under Wis. Stat. § 19.356. Because the custodian refused to disclose the requested records in the case before us, we do not interpret and apply the provisions of § 19.356. Instead, because this is an action pursued under Wis. Stat. § 19.37(1) by the record requesters (the newspapers) whose requests were denied, judicial review, and therefore application of the balancing test by the

## II. DISCUSSION

### A. Standard of Review

¶ 14. "We review a summary judgment decision independently, employing the same methodology as the circuit court," but benefitting from its analysis. *Blunt v. Medtronic, Inc.,* 2009 WI 16, ¶ 13, 315 Wis. 2d 612, 760 N.W.2d 396 (citing *Acuity v. Bagadia,* 2008 WI 62, ¶ 12, 310 Wis. 2d 197, 750 N.W.2d 817). The interpretation of statutes and the Wisconsin Constitution and their applications to undisputed facts present questions of law that we review independently. *County of Dane v. LIRC,* 2009 WI 9, ¶ 14, 315 Wis. 2d 293, 759 N.W.2d 571 (citing *Watton v. Hegerty,* 2008 WI 74, ¶ 6, 311 Wis. 2d 52, 751 N.W.2d 369; *Marder v. Bd. of Regents of the Univ. of Wis. Sys.,* 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110) (interpreting and applying statutes independently of the circuit court and court of appeals); *Village Food & Liquor Mart v. H&S Petroleum, Inc.,* 2002 WI 92, ¶ 7, 254 Wis. 2d 478, 647 N.W.2d 177 (citing *State v. City of Oak Creek,* 2000 WI 9, ¶ 18, 232 Wis. 2d 612, 605 N.W.2d 526) (interpreting and applying the Wisconsin Constitution independently of the circuit court and court of appeals). Finally, application of the balancing test for disclosure of public records is a question of law that we review independently. *Wis. Newspress, Inc. v. Sch. Dist. of Sheboygan Falls,* 199 Wis. 2d 768, 784, 546 N.W.2d 143 (1996).

---

reviewing court, applies with respect to every record requested. *Wis. Newspress, Inc. v. Sch. Dist. of Sheboygan Falls,* 199 Wis. 2d 769, 780, 546 N.W.2d 143 (1996) (noting, in a case where a record request was denied by the record custodian, that "the balancing test must be applied in every case in order to determine whether a particular record should be released").

B. As Otherwise Provided by Law

¶ 15. Under the Public Records Law, Wis. Stat. § 19.35(1)(a), *"[e]xcept as otherwise provided by law,* any requester has a right to inspect any record." (Emphasis added.) WSEU argues that the legislature's ratification of the collective bargaining agreement causes Article 2/4/4's prohibition on the disclosure of employees' names to the press to become "otherwise provided by law," within the meaning of that phrase in § 19.35(1)(a) of the Public Records Law.

¶ 16. In response, the newspapers argue that the legislature failed to comply with certain requirements of Wis. Stat. § 111.92(1)(a) as part of its ratification of the collective bargaining agreement, and that this failure prevented Article 2/4/4 from becoming an exception to the Public Records Law. The newspapers assert that § 111.92(1)(a) requires JCOER to "introduce in a bill or companion bills . . . that portion of the tentative agreement which requires legislative action for implementation, such as . . . any proposed amendments, deletions or additions to existing law." The amicus in support of the newspapers' position also argues that the ratification of the collective bargaining agreement was insufficient to satisfy Article IV, Section 17(2) of the Wisconsin Constitution.

¶ 17. The parties do not dispute that no companion bills were introduced to amend the Public Records Law at the time of the collective bargaining agreement's ratification. However, WSEU argues that Wis. Stat. § 111.92(1)(a) sets forth a "rule of proceeding," compliance with which courts have no jurisdiction to review, thereby precluding judicial review of whether a companion bill was required. Alternatively, WSEU argues that even if courts have jurisdiction to review legislative

455

compliance with § 111.92(1)(a), the procedures sur-
rounding the legislature's ratification of the collective
bargaining agreement were sufficient, by themselves, to
cause Article 2/4/4 of that agreement to amend the
Public Records Law.

1. Court jurisdiction to review

¶ 18. WSEU first argues that we do not have
jurisdiction to review the legislature's compliance with
Wis. Stat. § 111.92(1)(a) because it sets forth a legisla-
tive "rule of proceeding." Article IV, Section 8 of the
Wisconsin Constitution states in pertinent part that
"[e]ach house may determine the rules of its own
proceedings." Rules of proceeding have been defined as
those rules having "to do with the process the legisla-
ture uses to propose or pass legislation or how it
determines the qualifications of its members." *Custo-
dian of Records for the LTSB v. State*, 2004 WI 65, ¶ 30,
272 Wis. 2d 208, 680 N.W.2d 792. We have interpreted
Article IV, Section 8 to mean that the legislature's
compliance with rules of proceeding is exclusively
within the province of the legislature, because "a legis-
lative failure to follow [its own] procedural rules is
equivalent to an ad hoc repeal of such rules, which the
legislature is free to do at any time." *Id.*, ¶ 28. Accord-
ingly, courts will not intermeddle in purely internal
legislative proceedings, even when the proceedings at
issue are contained in a statute. *State ex rel. La Follette
v. Stitt*, 114 Wis. 2d 358, 364, 338 N.W.2d 684 (1983).

¶ 19. Here, we need not decide whether Wis. Stat.
§ 111.92(1)(a) is a rule of legislative proceeding because
a statute's terms must be interpreted to comply with

constitutional directives. Accordingly, even if the statute might otherwise be characterized as a legislative rule of proceeding, we may interpret the statute and apply it to the legislative action to determine whether that action complies with the relevant constitutional mandates. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803); *Stitt,* 114 Wis. 2d at 367; *McDonald v. State,* 80 Wis. 407, 411–12, 50 N.W. 185 (1891).

¶ 20. Therefore, because both Wis. Stat. § 111.92(1)(a) and Article IV, Section 17(2) require the legislature to take additional actions to amend existing law or to create new law,[13] and we have jurisdiction to interpret the Wisconsin Constitution and the Wisconsin Statutes, we have the authority to evaluate legislative compliance with § 111.92(1)(a). *Stitt,* 114 Wis. 2d at 367. Accordingly, we reject WSEU's argument in this respect, and proceed to determine whether the legisla-

---

[13] In *Board of Regents of the University of Wisconsin System v. Wisconsin Personnel Commission,* 103 Wis. 2d 545, 309 N.W.2d 366 (Ct. App. 1981), the court of appeals invalidated certain provisions of collective bargaining agreements under Wis. Stat. § 111.92(1)(a) because those agreements were not "accompanied by subsequently adopted companion bills that in any respect modified the conflicting provisions of" the statutes to which they were addressed. *Id.* at 557. That is a similar fact situation to the facts of this case. However, the court in *Board of Regents* raised this issue *sua sponte,* and did not consider whether judicial review might have been foreclosed because § 111.92(1)(a) constituted a rule of proceeding. As a result, the court also did not consider the constitutional implications of § 111.92(1)(a) raised here. We agree with the result reached in *Board of Regents.* However, whether provisions in a collective bargaining agreement amend published statutes simply because the collective bargaining agreement was ratified by the legislature presents a more complicated question than statutory interpretation of § 111.92(1)(a).

ture complied with § 111.92(1)(a) in light of the Wisconsin Constitution.[14]

## 2. Constitutional requirements

¶ 21. We begin by examining whether, under the relevant constitutional provisions, Article 2/4/4 is a "law." As we have previously explained, an act of the legislature that is not authorized by the constitution is not a law. *State ex rel. Martin v. Zimmerman,* 233 Wis. 16, 21, 288 N.W. 454 (1939). Here, the operative provision of the Wisconsin Constitution, Article IV, Section 17(2),[15] provides that "[n]o law shall be enacted except by bill" and that "[n]o law shall be in force until

---

[14] Chief Justice Abrahamson's dissent conflates ratification of the collective bargaining agreement with legislating to amend an existing statute. Chief Justice Abrahamson's dissent, ¶ 30. Her analysis misses the mark. Although we agree with the Chief Justice that 2003 Wisconsin Act 319 validly ratified the collective bargaining agreement, the real question is whether the legislature took the additional actions required by both Wis. Stat. § 111.92(1)(a) and Article IV, Section 17(2) of the Wisconsin Constitution to make Article 2/4/4 of the collective bargaining agreement a "law."

[15] The portion of Article IV, Section 17(2) of the Wisconsin Constitution stating that "[n]o law shall be in force until published" was created in 1977. Prior to 1977, the requirement that laws be published before they have force and effect was contained in Article VII, Section 21 of the Wisconsin Constitution, which has since been repealed. *See Niagara of Wis. Paper Corp. v. DNR,* 84 Wis. 2d 32, 49, 268 N.W.2d 153 (1978) (noting that Article IV, Section 17 was "formerly Art. VII, sec. 21"). Article VII, Section 21 read in pertinent part as follows: "[N]o general law shall be in force until published."

Our discussion relying on *State ex rel. Martin v. Zimmerman,* 233 Wis. 16, 288 N.W. 454 (1939), and other pre-1977 case law, relates to Article VII, Section 21. However, because the

published." Accordingly, in order for the legislature to create a law, the proposed law must be enacted by bill and it also must be published. *Zimmerman,* 233 Wis. at 19 (concluding that official publication is a necessary component to creating a law).

### a. Enacted by bill

¶ 22. The first requirement of Article IV, Section 17(2) is that the matter be enacted by bill. We address two contentions in this respect. First, WSEU argues that the provisions of Article 2/4/4 of the collective bargaining agreement were enacted by bill because a bill, 2003 Senate Bill 565, was introduced for the purpose of ratifying the collective bargaining agreement. Upon passage, Senate Bill 565 became 2003 Wisconsin Act 319, which was published on May 28, 2004. Second, Amicus OSER argues that Article 2/4/4 was incorporated by reference into a validly enacted law based on the ratifying bill's reference to the collective bargaining agreement. In response to both of these contentions, the newspapers argue that in order to amend an existing law, the terms of Article 2/4/4 needed to be expressed in an enacted bill.[16] We address these arguments in turn.

### i. 2003 Wisconsin Act 319

¶ 23. Before ratification of the collective bargaining agreement, JCOER conducted a public hearing on

underlying purpose of the publication requirement is the same with respect to the issues we consider here, that case law applies with equal force to the current publication requirement contained in Article IV, Section 17(2).

[16] The legislature's own directive requires that all "proposed amendments, deletions or additions to existing law" be included in the ratifying bill. *Board of Regents,* 103 Wis. 2d at 557–58 (quoting Wis. Stat. § 111.92(1)(a)).

the agreement. After JCOER voted to approve the agreement, JCOER introduced 2003 Senate Bill 565, which was submitted to the legislature. The bill as passed by the legislature and signed by the governor provides in pertinent part:

The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:

Section 1. Agreement ratified. The legislature ratifies the tentative agreement negotiated for the 2003–05 biennium between the state of Wisconsin, the office of state employment relations, and the Wisconsin State Employees Union . . ., as approved by the employees of the professional social services collective bargaining unit and approved and recommended by the joint committee on employment relations, and authorizes the necessary expenditure of moneys for implementation . . . . The director of the office of state employment relations shall file an official copy of the agreement, certified by the co-chairpersons of the joint committee on employment relations, with the secretary of state. No formal or informal agreement between the parties that is not a part of the official copy is deemed to be approved by the legislature under this act.

That 2003 Wisconsin Act 319 was later published is not in dispute. The parties further agree that no other bill relating to WSEU's collective bargaining agreement was enacted by the Wisconsin Legislature.

¶ 24. We conclude that the mere enactment of 2003 Senate Bill 565 and publication of 2003 Wisconsin Act 319 was not sufficient to cause the provisions of Article 2/4/4 of the collective bargaining agreement to become a law enacted by bill under Article IV, Section 17(2) of the Wisconsin Constitution. Nowhere in 2003 Wisconsin Act 319 does any reference to the Public Records Law or Article 2/4/4 appear. Nothing in Act 319

purports to amend any published statutes. Act 319 contains no language which might put the citizens of Wisconsin on notice that the Public Records Law is being amended. Although the constitutionally required language, "The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:," *see* Wis. Const. art. IV, § 17(1), appears in Act 319 itself, that language precedes an Act which purports to do no more than ratify the collective bargaining agreement between WSEU and the State. As a result, Article 2/4/4 remains a provision contained in a contract.

¶ 25. If a right is given to the public by statute, such as the right to seek disclosure of public records, the legislature generally may take that right away through legislative action in compliance with constitutional mandates. However, since Article 2/4/4 of the collective bargaining agreement was not enacted by bill, it remains a contractual provision. It is not "law" under Wis. Stat. § 19.35(1)(a) that is an exception to the Public Records Law.

### ii. incorporation by reference

¶ 26. Amicus OSER, arguing in support of WSEU, anticipates our concern with respect to the constitutional requirement that laws be enacted by bill. In response, OSER argues that because 2003 Wisconsin Act 319 references the collective bargaining agreement, and the collective bargaining agreement contains Article 2/4/4, Article 2/4/4's prohibition on the disclosure of the employees' names is a statutory amendment incorporated by reference.

461

¶ 27. We acknowledge that, under certain circumstances, incorporation by reference may be effective to work a change in the law. *See, e.g., George Williams College v. Village of Williams Bay,* 242 Wis. 311, 316, 7 N.W.2d 891 (1943) (discussing doctrine of "legislation by reference"); *Gilson Bros. Co. v. Worden-Allen Co.,* 220 Wis. 347, 352–53, 265 N.W. 217 (1936) (noting one statute's necessarily implied adoption of limits contained in another statute). However, our cases recognizing incorporation by reference have generally dealt with incorporating the provisions of other published statutes. *See Williams Bay,* 242 Wis. at 316; *Gilson Bros.,* 220 Wis. at 352–53. In those instances, the constitutional procedures set forth in Article IV, Section 17(2) would presumably be satisfied. That is not the case here.

¶ 28. OSER cites *State v. Wakeen,* 263 Wis. 401, 57 N.W.2d 364 (1953), which dealt with Wis. Stat. § 151.06 (1953). Section 151.06(1) (1953) defined the term "drug" in part as "[a]rticles recognized in the official United States Pharmacop[]eia, official Homeopathic Pharmacop[]eia of the United States, or official National Formulary, or any supplement to any of them, intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals." That is, the legislature incorporated by reference federal government documents defining the word "drug."

¶ 29. *Wakeen* is distinguishable. First, Wis. Stat. § 151.06 (1953) was not challenged in regard to noncompliance with the constitutional procedures necessary to enacting a law, as is the case here. *Id.* at 407. Instead, § 151.06 (1953) was challenged as an unlawful delegation of legislative power by the Wisconsin Legislature to the entities responsible for publishing the United States Pharmacopeia. *Id.* Second, § 151.06 (1953) expressly

stated that it was adopting the definitions of "drug" contained in the referenced document. *Id.* at 404. Here, nothing in 2003 Wisconsin Act 319 states that it is expressly adopting an exception to the Public Records Law by ratifying Article 2/4/4, much less adopting *any* amendment to *any* statute. Accordingly, because there was actually a reference to the specific document being incorporated in the statute itself, and the purpose of incorporation was apparent on the statute's face, § 151.06 (1953)'s reference to the federal government document could arguably be said to have been enacted by bill.

¶ 30. However, although we discuss the constitutional requirements implicated here and their potential effect in *Wakeen,* the documents referenced by Wis. Stat. § 151.06 (1953) in *Wakeen* did not constitute the type of "law" implicated by Article IV, Section 17(2) of the Wisconsin Constitution in the first place. As we noted in *Wakeen,* "[t]he publications referred to in the statute [were] not published in response to any delegation of power, legislative or otherwise, by the statute. . . . [Instead,] these books [had] been recognized as *standards* by the congress of the United States and by the legislatures of all forty-eight states, at least, as far as the United States Pharmacopeia [was] concerned." *Id.* at 411–12 (emphasis added); *see also* 50 Op. Att'y Gen. 107, 111 (1961) (noting that *Wakeen* was "concerned with the establishment of *standards* by reference," not incorporation of sources being given the force of law (emphasis added)).

¶ 31. Here, Article 2/4/4 is not being characterized as a "standard" being incorporated by reference in 2003 Wisconsin Act 319. Instead, WSEU is arguing that Article 2/4/4 is "law," such that its prohibition on the disclosure of WSEU-represented employees' names is

"otherwise provided by law," and therefore an express exception to the Public Records Law pursuant to Wis. Stat. § 19.35(1)(a). However, in order to create a law, Article 2/4/4 of the collective bargaining agreement must have been enacted in a manner sufficient to satisfy Article IV, Section 17(2). It was not.

b. Publication

¶ 32. Publication is the other requirement of Article IV, Section 17(2). Nearly, 150 years ago, we noted the purpose of the constitutional publication requirement is

> the protection of the people, by preventing their rights and interests from being affected by laws which they had no means of knowing. But all are bound by, and are bound to take notice of public statutes. . . . [If the publication requirement is not enforced,] it is manifest that the object of this clause of the constitution is in a great measure defeated. And the people are liable to act blindly with reference to their most important interests, and to have their rights sacrificed by the operation of laws which they are bound to know, but have no means of knowing. Such a result is in conflict with the first duty which a state owes to its people.

*Clark v. City of Janesville*, 10 Wis. 119 (*136), 141–42 (*181) (1859). General notice to the public of laws by which all will be bound is the policy that drives publication. *Id.* Accordingly, if some action is argued to be sufficient to constitute publication, that action must be evaluated in light of the purpose publication seeks to achieve, i.e., was the public provided with sufficient notice of the law that is being enacted or amended.

¶ 33. We have addressed methods by which the constitutional publication requirement may be satisfied:

> While it is true that the employment of the art of printing is the best *means* of publication, still *publication* cannot be confined to the limited signification of mere *printing*, but comprehends the exercise of additional labor and skill. This provision implies a discretion to be exercised in the method of publication; for instance,—that the general laws which cannot be in force until published, shall be published in the public journals, that being the most speedy method; or in pamphlet form, that being more convenient for many purposes; or even by proclamation at the door of the court house in each county . . . . All these would be different forms of publication, and all would answer the constitutional requirement . . . .

*Sholes v. State,* 2 Pin. 499, 511–12 (Wis. 1850) (emphasis in original). It is apparent from this discussion that the legislative branch, which has been vested with the legislative power under the Wisconsin Constitution, has discretion in choosing how to comply with the publication requirement. However, it is also apparent that, despite this discretion, the legislature may not ignore the constitutional publication requirement altogether. While we are conscious of the substantial deference we owe to the other independent branches of government in the exercise of their constitutional responsibilities, we are also conscious of our own responsibility to determine whether the provisions of the Wisconsin Constitution have been followed.

¶ 34. WSEU argues[17] that the publication of 2003 Wisconsin Act 319, which ratified the collective bargaining agreement, satisfies the publication requirement with respect to Article 2/4/4. Alternatively, WSEU argues that the public hearings conducted by JCOER prior to introducing 2003 Senate Bill 565 to the legislature were sufficient to constitute publication. However, although it is true that the public may have had the opportunity for input in the ratification of the agreement at the public hearings, and some citizens may thereby have been put on notice of the collective bargaining agreement's terms, the mere fact of a public hearing is insufficient to satisfy the constitutional requirement of publication. This is so because the purpose of publication is to give sufficient notice to the general public that the legislature has enacted new law. *Clark,* 10 Wis. 141–42 (*181). A hearing does not accomplish this purpose.

---

[17] WSEU did not directly address the constitutional requirement of publication in its briefs. Instead, WSEU's arguments regarding the extent to which Article 2/4/4 is enacted "law" relate more to whether individual legislators were aware of Article 2/4/4's content at the time they voted on 2003 Wisconsin Act 319. However, Article IV, Section 17(2)'s publication requirement does not exist to promote that end. Instead, publication is required for "the protection of *the people,* by preventing their rights and interests from being affected by laws which they had no means of knowing." *Clark v. City of Janesville,* 10 Wis. 119 (*136), 141–42 (*181) (1859) (emphasis added). Furthermore, counsel for WSEU *did* address the constitutional publication issue at oral argument, and further arguments on this point were contained in the amicus brief submitted by OSER, as well as in the newspapers' brief responding to OSER's brief.

¶ 35. Furthermore, nothing in 2003 Wisconsin Act 319, once published, put the citizens of Wisconsin on notice that a document to which Act 319 referred, i.e., the collective bargaining agreement, amended the Public Records Law. All that Act 319 says is that the legislature is ratifying a collective bargaining agreement; it makes no references to any changes to existing law. Accordingly, because the publication requirement is meant to avoid the situation where "the people . . . have their rights sacrificed by the operation of laws which they are bound to know, but have no means of knowing," *id.* at 142 (*181), and this situation would likely result if WSEU's argument were accepted here, we conclude that Article 2/4/4 of the collective bargaining agreement was not published in accord with the constitutional requirement of Article IV, Section 17(2). Accordingly, because Article 2/4/4 was never enacted by bill or published as required by Article IV, Section 17(2) of the Wisconsin Constitution, Article 2/4/4 never became "law," a necessary prerequisite for it to come within Wis. Stat. § 19.35(1)(a)'s exception to disclosure.

3. Wisconsin Stat. § 111.92(1)(a)

¶ 36. Finally, we interpret Wis. Stat. § 111.92(1)(a). Section 111.92(1)(a) provides in relevant part:

> Any tentative agreement reached between the office, acting for the state, and any labor organization representing a collective bargaining unit specified in s. 111.825(1) or (2)(a) to (e) shall, after official ratification by the labor organization, be submitted by the office to the joint committee on employment relations, which shall hold a public hearing before determining its approval or disapproval. If the committee approves the

467

> tentative agreement, it shall introduce in a bill or companion bills, . . . that portion of the tentative agreement which requires legislative action for implementation, such as . . . any proposed amendments, deletions or additions to existing law.

¶ 37. The provision on which the newspapers focus is Wis. Stat. § 111.92(1)(a)'s requirement that JCOER "shall introduce in a bill or companion bills . . . that portion of the tentative agreement which requires legislative action for implementation, such as . . . any proposed amendments, deletions or additions to existing law." WSEU admits that JCOER did not introduce a bill or companion bill that identifies Article 2/4/4 as amending the Public Records Law. Nevertheless, WSEU asserts that the Act ratifying the collective bargaining agreement, 2003 Wisconsin Act 319, was sufficient to cause Article 2/4/4 to become a law.

¶ 38. We begin by noting that Wis. Stat. § 111.92(1)(a) is not ambiguous; it is expressed in mandatory terms. Section 111.92(1)(a) requires that if a collective bargaining agreement is to amend an existing law, JCOER "shall" introduce a bill for "that portion" of the agreement that amends existing statutes. JCOER is also to accompany any proposed amendment to current statutes with an "informative message of concurrence recommending passage of such legislation without change." *Bd. of Regents,* 103 Wis. 2d at 557. It is undisputed that JCOER introduced no companion legislation or message recommending amendment to the Public Records Law.

¶ 39. Wisconsin Stat. § 111.92(1)(a) assures that the legislature and the public will be fully informed of the effect of legislative actions when the legislature chooses to amend an existing law as part of its ratification of a collective bargaining agreement to which the

State is a party. The statutory requirement of a separate bill that effects changes in the law has constitutional ramifications because Article IV, Section 17(2) of the Wisconsin Constitution also addresses the action that is necessary to create a law.

¶ 40. Article IV, Section 17(2) provides that "[n]o law shall be enacted except by bill" and that "[n]o law shall be in force until published." As we have explained above, a bill that is sufficient to satisfy Article IV, Section 17(2) must give notice to the public of the contents of the proposed legislation, and when the bill is passed, the session laws for that term of the legislature will contain that notice. That was not done here.

■■ ■

¶ 41. Our interpretation of the term "bill or companion bills" in Wis. Stat. § 111.92(1)(a) is driven by these constitutional considerations because § 111.92(1)(a) cannot be interpreted in a manner that would place it in conflict with the requirements of Article IV, Section 17(2) of the Wisconsin Constitution. Stated otherwise, were we to interpret § 111.92(1)(a) as obviating the requirements of Article IV, Section 17(2) in regard to creating a law, we would cause § 111.92(1)(a) to become unconstitutional through our interpretation. However, when interpreting a statute, we do so in a manner that will not create constitutional conflicts. *See Kenosha County Dep't of Human Servs. v. Jodie W.,* 2006 WI 93, ¶ 50, 293 Wis. 2d 530, 716 N.W.2d 845 (citing *State v. Hezzie,* 219 Wis. 2d 848, 862, 580 N.W.2d 660 (1998)) (reasoning that statutes are interpreted with a presumption of constitutionality). We follow that maxim of statutory construction here. Accordingly, we conclude that the Act by which the collective bargaining agreement was ratified was insufficient to amend the Public Records Law.

## C. Condition of Employment

¶ 42. Having determined that the legislative ratification of the WSEU collective bargaining agreement containing Article 2/4/4 was insufficient to amend the Public Records Law, we now proceed to determine whether Article 2/4/4's prohibition on the disclosure of WSEU-represented employees' names may nevertheless be enforced under Wis. Stat. § 111.93(3), as a "condition of employment," thereby superseding the Public Records Law's disclosure requirement.

¶ 43. Wisconsin Stat. § 111.93(3) provides in pertinent part:

> [I]f a collective bargaining agreement exists between the employer and a labor organization representing employees in a collective bargaining unit, the provisions of that agreement shall supersede the provisions of civil service and other applicable statutes . . . related to wages, fringe benefits, hours, and conditions of employment . . . .

WSEU contends that the agreement not to disclose employees' names falls within the term, "conditions of employment," in § 111.93(3).

¶ 44. The term "conditions of employment," although frequently used in the Wisconsin Statutes, is not defined either in Wis. Stat. ch. 111 or elsewhere. In ascertaining the meaning of undefined terms, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. The ejusdem generis canon of statutory construction, which uses context to elicit meaning from statutory language, provides that "when general words follow specific words

in the statutory text, the general words should be construed in light of the specific words listed." *State v. Quintana,* 2008 WI 33, ¶ 27, 308 Wis. 2d 615, 748 N.W.2d 447 (citing *Adams Outdoor Adver., Ltd. v. City of Madison,* 2006 WI 104, ¶ 62 n.15, 294 Wis. 2d 441, 717 N.W.2d 803). Therefore, the general word or phrase usually will encompass the same types of matters as the specific words. *Id.*

¶ 45. The court of appeals, in applying the ejusdem generis canon to Wis. Stat. § 111.93(3), has concluded that because the term "conditions of employment" "is linked with such terms as 'wages,' 'rates of pay,' 'hours,' 'fringe benefits,' 'hiring,' 'promotion,' 'compensation' and 'tenure[,]' . . . [t]he term 'conditions of employment' . . . generally connotes pay, benefits and other matters which directly affect the interests of employees." *Dep't of Employment Relations v. Bldg. Trades Negotiating Comm,* 2003 WI App 178, ¶ 27, 266 Wis. 2d 512, 669 N.W.2d 499 (citing Wis. Stat. § 111.32(9)(a); Wis. Stat. § 111.375(1); Wis. Stat. § 111.84(1)(c) and (e); § 111.93(2) and (3)).

¶ 46. The court of appeals also addressed the meaning of "conditions of employment" in *Madison Teachers, Inc. v. WERC,* 218 Wis. 2d 75, 580 N.W.2d 375 (Ct. App. 1998). There, the parties agreed that "conditions of employment" for a teacher in a classroom environment included "matters such as the quality and safety of the work environment, the work load for the time allotted, the stressfulness of assignments, and the potential for disciplinary problems with students." *Id.* at 89; *see also Blackhawk Teachers' Federation Local 2308 v. WERC,* 109 Wis. 2d 415, 442, 326 N.W.2d 247 (Ct. App. 1982) (concluding that the possibility of discipline or censorship is related to a teacher's working conditions).

471

¶ 47. In light of *Madison Teachers,* WSEU argues that Article 2/4/4's prohibition on the disclosure of names is a "condition of employment," superseding the Public Records Law's disclosure requirement as set forth in Wis. Stat. § 19.35(1)(a), because it relates to the "safety of the work environment." *Madison Teachers,* 218 Wis. 2d at 89. WSEU contends that because disclosure of the WSEU-represented employees' names has the potential to subject some of the employees, such as those working for the Department of Corrections, to retaliation or harassment from individuals with whom they interact, Article 2/4/4's prohibition relates to conditions of employment.

¶ 48. In response, the newspapers contend that the question is not whether Article 2/4/4 of the collective bargaining agreement relates to "conditions of employment." Rather, the question is whether the "other applicable statutes," which are purportedly superseded by the provisions of a collective bargaining agreement, relate to "conditions of employment." We agree that this is a more reasonable interpretation of Wis. Stat. § 111.93(3) when the statute is read as a whole and the term "conditions of employment" is not taken out of context. *Kalal,* 271 Wis. 2d 633, ¶ 46 (concluding that the context in which statutory terms are used is important to ascertaining statutory meaning).

¶ 49. Read as a whole, Wis. Stat. § 111.93(3) instructs that "the provisions of [the collective bargaining] agreement shall supersede the provisions of civil service and other applicable statutes ... related to wages, fringe benefits, hours, and conditions of employment whether or not the matters contained in those statutes, rules, and policies are set forth in the collec-

472

tive bargaining agreement." § 111.93(3). Section 111.93(3) plainly states that it is the statutory provision that is being superseded by the collective bargaining agreement that must relate to "conditions of employment." The Public Records Law's disclosure requirement, Wis. Stat. § 19.35(1)(a), however, relates to informing the public about the affairs of government through the provision of public records. *See* Wis. Stat. § 19.31. That is, § 19.35(1)(a) does not relate to conditions of employment as that term is used in § 111.93(3).

¶ 50. Under the *Bldg. Trades* definition of "conditions of employment," Wis. Stat. § 19.35(1)(a) is not among the statutes that relate to " 'wages,' 'rates of pay,' 'hours,' 'fringe benefits,' 'hiring,' 'promotion,' 'compensation' and 'tenure.' " *Bldg. Trades*, 266 Wis. 2d 512, ¶ 27. Instead, § 19.35(1)(a) of the Public Records Law relates more generally to the public's right to disclosure of public records. *See* Wis. Stat. § 19.31. Accordingly, we conclude that § 19.35(1)(a) is not among the "other applicable statutes" within the purview of Wis. Stat. § 111.93(3).

¶ 51. In addition to the other arguments addressed above, the newspapers contend that the policy of promoting the public interest is served by their interpretations of both the Public Records Law and statutory collective bargaining procedures. The newspapers begin with Wis. Stat. § 111.80(1), which relates to collective bargaining procedures and provides:

> The public policy of the state as to labor relations and collective bargaining in state employment . . . recognizes that there are 3 major interests involved: that of the public, that of the employee and that of the employer. These 3 interests are to a considerable extent interrelated. It is the policy of this state to protect and

promote each of these interests with due regard to the situation and to the rights of the others.

The newspapers contend that § 111.80(1) requires that the "major interest" of the public must be considered, in addition to the interests of the employees and employers who are parties to the collective bargaining agreement. Although it is true that Article 2/4/4 of the collective bargaining agreement prohibits disclosure of employees' names to the *press,* not the *public,* "[i]f we are to have an informed public, the media must serve as the eyes and ears of that public. . . . [I]f the media is denied access to the affairs of government, the public for all practical purposes is denied access as well." *State ex rel. Newspapers, Inc. v. Showers,* 135 Wis. 2d 77, 81, 398 N.W.2d 154 (1987). Accordingly, Article 2/4/4's prohibition on disclosure to the press is effectively a prohibition on disclosure to the public, and therefore affects a "major interest" of the public.

¶ 52. Under the Public Records Law itself, the public has a very strong interest in becoming an informed electorate through the disclosure of public records. Wis. Stat. § 19.31. Section 19.31 states the following:

In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, [the Public Records Law] shall be construed in every instance with

474

a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

§ 19.31. We have recognized this provision as "one of the strongest declarations of policy to be found in the Wisconsin Statutes," *Zellner v. Cedarburg School District,* 2007 WI 53, ¶ 49, 300 Wis. 2d 290, 731 N.W.2d 240 (citing *Munroe v. Braatz,* 201 Wis. 2d 442, 549 N.W.2d 451 (Ct. App. 1996)).

¶ 53. In light of these express statutory policies, we cannot accept WSEU's argument that parties may, through the collective bargaining process, contract away the public's rights under Wis. Stat. § 19.35(1)(a). To hold otherwise would be contrary to the public interest, and would have the potential to eviscerate the Public Records Law through private agreements. Accordingly, under Wis. Stat. § 111.93(3)'s plain language, and the express policies of the Public Records Law and statutory collective bargaining procedures, § 111.93(3) does not cause Article 2/4/4 of the collective bargaining agreement to supersede § 19.35(1)(a). Therefore, the Public Records Law's presumption of access to these records applies.

D. The Balancing Test

■■■

¶ 54. We have concluded that Article 2/4/4 is not an exception to the Public Records Law because its provisions are not "otherwise provided by law" within the meaning of Wis. Stat. § 19.35(1)(a) and because Wis. Stat. § 111.93(3) does not cause Article 2/4/4 to supersede § 19.35(1)(a). Accordingly, the balancing test must

be applied to determine whether disclosure of the WSEU-represented employees' names can be precluded. *See Linzmeyer v. D.J. Forcey*, 2002 WI84, ¶ 11, 254 Wis. 2d 306, 646 N.W.2d 811 (citing *Wis. Newspress*, 199 Wis. 2d at 776) (concluding that in "the absence of a statutory or common law exception, the presumption favoring release can [] be overcome [only] when there is a public policy interest in keeping the records confidential").

■

¶ 55. The balancing test involves balancing the public interest in disclosure against the public interest in non-disclosure. *Wis. Newspress*, 199 Wis. 2d at 786–88. This test should be applied when the record custodian has refused to produce the record, in order to evaluate the merits of the custodian's decision. *Id.*

¶ 56. When courts balance the public interest in disclosure against the public interest in non-disclosure, generally there will be no "blanket exceptions from release." *Linzmeyer*, 254 Wis. 2d 306, ¶ 10 (citing *Woznicki v. Erickson*, 202 Wis. 2d 178, 183, 549 N.W.2d 699 (1996)). Accordingly, the balancing test must be applied with respect to each individual record. *Wis. Newspress*, 199 Wis. 2d at 780 (concluding that "the balancing test must be applied 'on a case-by-case basis' . . . in order to determine whether a particular record should be released." (quoting *Law Offices of William A. Pangman & Assoc. v. Stigler*, 161 Wis. 2d 828, 840, 468 N.W.2d 784 (Ct. App. 1991))); *Hempel v. City of Baraboo*, 2005 WI 120, ¶ 62, 284 Wis. 2d 162, 699 N.W.2d 551 (concluding that the balancing test does not create a "blanket rule excepting the disclosure of any . . . personnel records[;] . . . [e]ach request will lead to a fact-intensive inquiry"); *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 682, 137 N.W.2d 470 (1965)

(concluding that the determination of when "harm to the public interest would justify refusal to permit inspection . . . is . . . best . . . left to case-by-case decision[s]").

¶ 57. Here, it appears that the circuit court applied the balancing test to the WSEU members as a group because that is the manner in which WSEU presented the issue to the circuit court. For example, the circuit court related:

> Many of the employees represented by WSEU whose names were not disclosed are employed by the Department of Corrections and supervise inmates or criminal defendants on probation, parole or extended supervision. Those employees are concerned about retaliation or harassment at the hands of these offenders who bear animosity toward the DOC employee. For these reasons, WSEU's counsel writes, "Many Agents take extraordinary measures to prevent offenders they supervise to know their correct names and home addresses or any other identifying information." . . .
>
> I am confused by WSEU's argument. WSEU says that many DOC agents take extraordinary measures to keep their correct names from offenders. I see two possibilities. A given offender either knows her agent by the correct name or the offender knows the agent by some other name. Disclosure of the employees' names in this case changes nothing for the first offender. I fail to see how disclosure to the second offender creates any danger, since the second offender only knows the agent by some other name.

¶ 58. We do acknowledge that the circuit court may have considered each record request individually, but that is not apparent from its written decision. It may be that the circuit court's analysis was primarily guided by the parties' briefs for and against the cross-

motions for summary judgment. Alternatively, it may be that the factual record before the circuit court was not sufficiently developed with respect to each individual record request, such that it was not feasible for the circuit court to apply the balancing test individually.

¶ 59. Nevertheless, to the extent the circuit court applied the balancing test to WSEU members in the manner WSEU requested, we affirm that application. We note that there is a strong, legislatively-created presumption in favor of disclosure. *Hempel,* 284 Wis. 2d 162, ¶ 28. Although WSEU argues that there is *no* public interest served by disclosure of these records, we reject this argument, noting that

> [t]he public records law reflects a legislative determination that the public interest favors inspection of public records. . . . The law was intended to be a means by which citizens could more effectively monitor the activities of government. . . . There can thus never be occasion for finding "no public interest" in disclosure of such documents; the interest is legislatively presumed.

*Milwaukee Journal v. Call,* 153 Wis. 2d 313, 321, 450 N.W.2d 515 (Ct. App. 1989) (citing *Hathaway v. Joint Sch. Dist. No. 1,* 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984); *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 438, 279 N.W.2d 179 (1979); Michael J. Fitzgerald, *Public Access to Law Enforcement Records in Wisconsin,* 68 Marq. L. Rev. 705, 714 (1985)). That is, our determination does not hinge on whether there is some interest sufficient to justify disclosure. The legislature has already answered that question. *Id.* Instead, the inquiry is "whether the strong presumption favoring access and disclosure is overcome by some even stronger public policy favoring limited access or nondisclosure."

*Hempel,* 284 Wis. 2d 162, ¶ 28 (citing *Linzmeyer,* 254 Wis. 2d 306, ¶ 11; *Woznicki,* 202 Wis. 2d at 192–93).

¶ 60. Here, WSEU's arguments in this respect relate primarily to employees of the Department of Corrections, parole agents and DNR wardens. Specifically, WSEU argues that the release of these employees' names will lead to potential embarrassment, as well as endangering these employees by making it possible for individuals with whom they have interacted in the past to track them down and cause them harm. According to WSEU, these concerns present policies sufficient to overcome the strong presumption in favor of disclosure of these records.

¶ 61. We reject WSEU's arguments for several reasons. First, these names are already publicly available in a 269–page alphabetical directory, so it is difficult to contemplate how release of the names here will actually change anything.[18] Accordingly, the fact that the names are already publicly available weakens any argument WSEU sets forth that disclosure here will detrimentally affect the employees to an extent that the publicly available directories have not already.

¶ 62. Second, we have held in the past that the potential for embarrassment is not a basis for precluding disclosure. *Zellner,* 300 Wis. 2d 290, ¶ 50 ("[T]he public interest in protecting individuals' privacy and reputation arises from the public effects of the failure to honor the individual's privacy interests, and not the individual's concern about embarrassment." (quoting *Linzmeyer,* 254 Wis. 2d 306, ¶ 31)).

---

[18] We acknowledge that WSEU is currently pushing to have these directories removed from public availability, but that is not the current situation with respect to these names.

¶ 63. Finally, we note that the safety concerns set forth by WSEU with respect to correctional employees, parole agents and DNR wardens *in general,* when examined as a group, are not concerns different from those faced by other groups of employees of the State of Wisconsin. Nearly all public officials, due to their profiles as agents of the State, have the potential to incur the wrath of disgruntled members of the public, and may be expected to face heightened public scrutiny; that is simply the nature of public employment. *Wis. Newspress,* 199 Wis. 2d at 787 (citing *State ex rel. Bilder v. Township of Delavan,* 112 Wis. 2d 539, 557, 334 N.W.2d 252 (1983); *Wis. State Journal v. Univ. of Wis.-Platteville,* 160 Wis. 2d 31, 41, 465 N.W.2d 266 (Ct. App. 1990)) ("[A] prominent public official, or an official in a position of authority, should have a lower expectation of privacy regarding his or her employment records."); *see also Zellner,* 300 Wis. 2d 290, ¶ 53 ("The public [] has an interest in knowing how the government handles disciplinary actions of public employees. . . . 'All officers and employees of government are, ultimately, responsible to the citizens, and those citizens have a right to hold their employees accountable for the job they do.' " (quoting *Linzmeyer,* 254 Wis. 2d 306, ¶ 28)).

¶ 64. We note that this public need for heightened scrutiny of public officials as a result of public employment has been expressly recognized with respect to police officers, who, as a group, share many of the same safety concerns advanced here by WSEU on behalf of correctional officers, parole agents and DNR wardens, yet their records are still generally subject to disclosure under the Public Records Law. *See State ex rel. Journal/Sentinel, Inc. v. Arreola,* 207 Wis. 2d 496, 515, 558 N.W.2d 670 (Ct. App. 1996) (citing *Wis. Newspress,*

199 Wis. 2d at 788; *Wis. State Journal*, 160 Wis. 2d at 41) ("When individuals accept positions as police officers, they necessarily relinquish certain privacy rights and must be subject to public scrutiny. . . . As a result of their public employment, police officers have a lower expectation of privacy.").

¶ 65. As a result, accepting WSEU's safety-based arguments as exempting the entire group of WSEU's members here casts too broad a net, given the presumption of access to public records set out in Wis. Stat. § 19.31.[19] *See Kroeplin v. DNR,* 2006 WI App 227, ¶ 43, 297 Wis. 2d 254, 725 N.W.2d 286 (rejecting the proffered reason for denying access to public records because it was not a reason "specific to the particular documents

---

[19] We do not imply that the safety concerns of record subjects are always, or even often, inadequate to preclude disclosure, just that the safety concerns advanced here by WSEU are insufficiently particularized to preclude disclosure under the balancing test in this instance. To the contrary, safety concerns implicated by the disclosure of public records have been expressly recognized by the legislature as a basis for precluding disclosure in certain instances. Specifically, Wis. Stat. § 19.35(1)(am) notes that, in situations where an individual record requester is seeking "personally identifiable information" pertaining to himself or herself (i.e., the record requester is also the record subject), the records sought will not be subject to disclosure if their disclosure would "[e]ndanger an individual's life or safety." § 19.35(1)(am)2.b. Furthermore, where disclosure of records relating to correctional officers and employees of certain other facilities would endanger those employees' safety, disclosure of those records is precluded. § 19.35(1)(am)2.c. Although § 19.35(1)(am) does not apply here because the records sought are being sought not by the record subjects, but by third party newspapers, those statutory provisions may be considered as part of the balancing test applied to the records of individual record subjects.

in th[e] case" and instead appeared to "apply generally to all disciplinary records").

¶ 66. Accordingly, we reject WSEU's arguments when applied to the WSEU members as a group and conclude that the public policy favoring disclosure is not overcome here by a more compelling public policy favoring non-disclosure. We therefore affirm the circuit court's application of the balancing test concluding that when these records are reviewed as a group, they should be released.

¶ 67. As we noted above, it does not appear that the circuit court applied the balancing test individually to each employee's record. Accordingly, we do not opine on what the result would be if individual WSEU members intervene on remand and request the circuit court to examine the circumstances attendant to the release of individual names.

### III. CONCLUSION

¶ 68. We conclude that courts have jurisdiction to review whether the legislature's ratification of a collective bargaining agreement under Wis. Stat. § 111.92(1)(a), without introducing a companion bill to specifically amend the Public Records Law, is sufficient to effect a change in that law. We so conclude because courts have jurisdiction to determine the meaning of statutes, here § 111.92(1)(a), and of constitutional provisions, here Article IV, Section 17(2) of the Wisconsin Constitution. We also conclude that ratification of the collective bargaining agreement was insufficient to amend the Public Records Law because Article 2/4/4 of the collective bargaining agreement was not "introduce[d] in a bill or companion bills" within the meaning of § 111.92(1)(a), as that meaning is driven by the

requirements of Article IV, Section 17(2) of the Wisconsin Constitution. Accordingly, the ratification of the collective bargaining agreement did not create an exception to the Public Records Law. Additionally, we conclude that Wis. Stat. § 111.93(3) does not support WSEU's assertion that Article 2/4/4 supersedes the Public Records Law's disclosure requirement, Wis. Stat. § 19.35(1)(a).

¶ 69. Finally, we affirm the circuit court's application of the balancing test, which it appears the circuit court applied to the WSEU members as a group because that is how the issue was argued to the circuit court. However, we do not decide what our conclusion would be if, on remand, individual record subjects intervene and request the circuit court to apply the balancing test to them, individually.

*By the Court.*—The decision of the circuit court is affirmed and the cause remanded to the circuit court.

¶ 70. ANN WALSH BRADLEY, J. (*concurring*). I write separately to concur with the mandate of the majority. I reach the same conclusion but rest on a different analysis.

¶ 71. Before delving into the question of whether the collective bargaining agreement is a law, it is necessary to address a threshold question: whether Wis. Stat. § 111.92(1)(a) sets forth a rule of legislative proceedings. If § 111.92(1)(a) is a rule of legislative proceeding then the doctrines of separation of powers and comity prevent the court from intervening to enforce the statute. If it is not a rule of proceeding, then we are free to interpret and apply the statute.

¶ 72. I agree with the dissent that this is a close case, and that "there is no simple way of distinguishing in close cases between a rule of legislative proceeding and a rule relating to non-procedural matters." *See*

dissent, ¶ 100. The dissent therefore weighs the interests involved.

¶ 73. It acknowledges that several significant factors weigh in favor of concluding that this is not a rule of legislative proceeding: "fairness requires notice"; "the public policy embodied in Wis. Stat. § 111.92(1)(a) . . . is best served when the bill pinpoints the parts of a collective bargaining agreement that modify existing law"; and "transparency in government [is] a dominant public policy in this state." Dissent, ¶¶ 101–103.

¶ 74. Nevertheless, the dissent also observes that several other factors provide a counter-balance. Ultimately, it concludes that the balance tips in favor of the court's restraint. Dissent, ¶ 107.

¶ 75. I see the balance differently. In a close case, I conclude that the weighty public policies of notice and transparency in government tip the scale. I would therefore determine that Wis. Stat. § 111.92(1)(a) is not a rule of legislative proceeding, and the court may intervene to examine whether its conditions were met.

¶ 76. I turn then to the statute to determine whether the collective bargaining agreement was properly ratified. Wis. Stat. § 111.92(1)(a) provides in part:

> If the [joint committee on employment relations] approves the tentative agreement, it shall introduce in a bill or companion bills, . . . that portion of the tentative agreement which requires legislative action for implementation, such as . . . any proposed amendments, deletions or additions to existing law.

The portion of the collective bargaining agreement that provides that the State will not release employee information to the press creates an amendment to the open records law. Thus, I must determine whether the legislature followed the dictates of Wis. Stat. § 111.92(1)(a) when it ratified the agreement.

¶ 77. I determine that it did not. Nothing in 2003 Wis. Act 319 explicitly sets forth any portion of the tentative agreement at all. Certainly, nothing in the text of the Act sets forth an amendment to the public records statute requiring legislative action. I thus determine that the directives in Wis. Stat. § 111.92(1)(a) were not met to the extent that 2003 Wis. Act 319 attempted to provide an amendment to the public records law. Like the majority, I ultimately conclude that because Wis. Stat. § 111.92(1)(a) was not satisfied, the records are to be released.

¶ 78. Accordingly, I respectfully concur.

¶ 79. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The newspapers (the Milwaukee Journal Sentinel and the Lakeland Times) argue that this court should interpret and apply Wis. Stat. § 111.92(1)(a) to determine whether legislation ratifying a collective bargaining agreement complies with § 111.92(1)(a). The newspapers' argument requires this court to determine whether Wis. Stat. § 111.92(1)(a) sets forth a rule of legislative proceeding, that is, a rule establishing procedural requirements falling within Article IV, Section 8 of the Wisconsin Constitution. Article IV, § 8 provides that "[e]ach house may determine the rules of its own proceedings."

¶ 80. If Wis. Stat. § 111.92(1)(a) is a rule of proceeding under the Wisconsin Constitution, the doctrine of separation of powers and the principle of comity apply, and the courts will not enforce § 111.92(1)(a): "If the legislature fails to follow self-adopted procedural rules in enacting legislation, and such rules are not mandated by the constitution, courts will not intervene to declare the legislation invalid."[1]

---

[1] *State ex rel. La Follette v. Stitt,* 114 Wis. 2d 358, 365, 338 N.W.2d 684 (1983).

¶ 81. If Wis. Stat. § 111.92(1)(a) is not a rule of proceeding under the Wisconsin Constitution, the court will interpret and apply § 111.92(1)(a) to the fact situation presented.

¶ 82. The majority opinion concludes that Wis. Stat. § 111.92(1)(a) was not satisfied in the present case and that the records must be released. *See* majority op., ¶¶ 37–41. I reach a different conclusion. I conclude that § 111.92(1)(a) sets forth a rule of proceeding under the Wisconsin Constitution and courts should not intervene to enforce § 111.92(1)(a).

¶ 83. Wisconsin Stat. § 111.92(1)(a) provides in relevant part that if the Joint Committee on Employment Relations approves a tentative agreement between the State and a labor organization, the Committee "**shall introduce in a bill or companion bills . . . that portion of the tentative agreement which requires legislative action for implementation, such as . . . any proposed amendments, deletions or additions to existing law.**" This requirement about the content of a bill relating to a collective bargaining agreement is not mandated by the constitution.

¶ 84. The Joint Committee on Employment Relations did introduce a bill relating to the collective

*See also* 1 Norman J. Singer *Statutes and Statutory Construction* § 7.4, at 609–11 (6th ed. 2002) ("The decisions are nearly unanimous in holding that an act cannot be declared invalid for failure of a house to observe its own rules. . . . The legislature by statute or joint resolution cannot bind or restrict itself or its successors to the procedure to be followed in the passage of legislation."); Charles Luce, *Judicial Regulation of Legislative Procedure in Wisconsin,* 1941 Wis. L. Rev. 439, 453–54 ("The court will not invalidate an act because it appears that the respective houses of the legislature have not complied with their own rules in passing it.").

bargaining agreement at issue in the present case. The bill became law as 2003 Act 319. The Act ratified the tentative collective bargaining agreement, providing as follows in pertinent part:

> The legislature ratifies the tentative agreement negotiated for the 2003–05 biennium between the state of Wisconsin, the office of state employment relations, and the Wisconsin State Employees Union . . . . The director of the office of state employment relations shall file an official copy of the agreement, certified by the cochairpersons of the joint committee on employment relations, with the secretary of state.

¶ 85. The newspapers contend that the Act is invalid as a violation of Wis. Stat. § 111.92(1)(a) to the extent the Act attempts to ratify the portion of the collective bargaining agreement that amends the public records law. The Act, they argue, does not explicitly set forth that portion of the agreement that requires legislative action.

¶ 86. As is obvious from the text of the Act, nothing in the Act explicitly sets forth any portion of the tentative collective bargaining agreement at all, let alone any portion that requires legislative action. The Act does not refer to any statute; it does not refer to the public records statute; and it does not explicitly exempt information about state employee records from press access. The Act merely refers to and ratifies the collective bargaining agreement as a whole and requires that the agreement be filed with the Secretary of State.

¶ 87. I answer the issue presented, guided by these three legal principles:

(1) Courts have the authority to review legislative acts to determine whether they conflict with the United States or Wisconsin constitution.

(2) Courts have the authority to interpret statutes and apply them to the facts presented.

(3) "[T]he legislature's adherence to rules or statutes prescribing legislative procedure is a matter entirely within legislative control and discretion, not subject to judicial review unless the legislative procedure is mandated by the constitution."[2] If the legislature fails to follow self-imposed procedural rules, including a procedural rule in the form of a statute, the legislature is viewed as accomplishing "an implied *ad hoc* repeal of such rules."[3]

¶ 88. Because the first and third legal principles above relate to the Wisconsin constitution, I set forth the three relevant Wisconsin constitutional provisions.

---

[2] *State ex rel. La Follette v. Stitt,* 114 Wis. 2d 358, 365, 338 N.W.2d 684 (1983) (holding that 1983 Wisconsin Act 3 is valid although the enactment procedure may have violated Wis. Stat. § 13.49).

Wisconsin has long followed this rule. *See McDonald v. State,* 80 Wis. 407, 412, 50 N.W. 185 (1891) ("We think no court has ever declared an act of the legislature void for non-compliance with the rules of procedure made by itself, or the respective branches thereof, and which it or they may change or suspend at will."); *State ex rel. Hunsicker v. Board of Regents,* 209 Wis. 83, 86, 244 N.W. 618 (1932) ("It is a well settled principle of law that a statute will not be held void because the legislature did not follow its own rules in the passage of the act. This is on the theory that the legislature has the power to change its rules at any time." (citations omitted)); *Outagamie County v. Smith,* 38 Wis. 2d 24, 39, 155 N.W.2d 639 (1968) ("This court is without authority to intermeddle in matters of legislative concern. It is a well settled principle of Wisconsin constitutional law that one branch of the government has no authority to compel a co-ordinate branch to perform functions of judgment and discretion that are lawfully delegated to it by the constitution.").

[3] *Stitt,* 114 Wis. 2d at 365.

- No law shall be enacted except by bill. Wis. Const. art. IV, § 17(2).

- No law shall be in force until published. Wis. Const. art. IV, § 17(2).

- Each house may determine the rules of its own proceedings. Wis. Const. art. IV, § 8.[4]

¶ 89. 2003 Act 319 satisfies the first two constitutional provisions; it does not run afoul of Article IV, Section 17(2). It was enacted by a bill, namely 2003 Senate Bill 565. It was published on May 28, 2004.

¶ 90. Nothing in the Wisconsin Constitution requires that a bill ratifying a collective bargaining agreement contain language other than the language required to be in all acts under Article IV, Section 17(1).[5] Nor does anything in the Wisconsin Constitution forbid the legislature from enacting a law referring to an extrinsic document.[6] Insofar as § 111.92(1)(a) sets forth requirements about the content of a bill ratifying a collective

---

[4] For a discussion of the ten Wisconsin Constitution provisions relating to the procedure the legislature is to observe in enacting a statute, see Charles Luce, *Judicial Regulation of Legislative Procedure in Wisconsin,* 1941 Wis. L. Rev. 439.

[5] Article IV, Section 17(1) of the Wisconsin Constitution imposes the requirement that "[t]he style of all laws of the state shall be 'The people of the state of Wisconsin, represented in senate and assembly, do enacted as follows:". This language appears in 2003 Wisconsin Act 319.

[6] In *State v. Wakeen,* 263 Wis. 401, 57 N.W.2d 364 (1953), for example, the court reviewed a statute regulating the distribution of "drugs" and defining the word "drug" in relevant part as "[a]rticles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them, intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals."

bargaining agreement, it imposes a statutory limitation upon a legislative act ratifying a collective bargaining agreement that is not set forth in the Wisconsin Constitution.

¶ 91. I now turn to the third Wisconsin constitutional provision relating to the right of each house to determine the rules of its own proceedings. A court decides whether Wis. Stat. § 111.92(1)(a) is a "rule of proceeding" under Article IV, Section 8 of the Wisconsin Constitution.[7] The court has used the phrase "rules of its own proceedings" under Article IV, Section 8 interchangeably with the phrases "rules governing how [the legislature] operates" and "the legislature's procedural rules."[8]

---

*Wakeen*, 263 Wis. at 404 (quoting Wis. Stat. § 151.06). Wakeen contended that the statute represented "an unlawful delegation of legislative authority to the private organizations located outside of the state which compile the publications referred to [in the statute]," particularly insofar as the statute defined "drugs" to include "articles listed in future supplements"—that is, documents not yet in existence—to the publications listed in the statute. *Wakeen*, 263 Wis. at 406–07. The court concluded that the statute did not represent a delegation of legislative authority and was constitutionally valid. *See Wakeen*, 263 Wis. at 411–12.

In *Walgreen Co. v. City of Madison*, 2008 WI 80, ¶ 20, 311 Wis. 2d 158, 752 N.W.2d 687, this court interpreted and applied Wis. Stat. § 70.32(1), providing in part that "[r]eal property shall be valued by [a property] assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) . . . ." The property assessment manual is a document that the Department of Revenue prepares, amends from time to time, and publishes in electronic form and on the Internet. Wis. Stat. § 73.03(2a). It does not appear that the text of the property assessment manual may be found in any legislative act.

[7] *Custodian of Records v. Wisconsin*, 2004 WI 65, ¶ 29, 272 Wis. 2d 208, 680 N.W.2d 792.

[8] *Id.*, ¶¶ 28–29.

¶ 92. Neither the parties nor the amici curiae furnish a good definition or description of what is meant by the constitutional phrase "a rule of its own proceedings." This omission is not surprising. Courts and litigants have difficulty in some instances in distinguishing between a rule of proceeding and a rule governing a substantive matter. There is no magic line always easily discernible between procedural rules and rules governing non-procedural matters.

¶ 93. The newspapers argue that the language at issue in Wis. Stat. § 111.92(1)(a) relates to content, not procedure. I agree that the statutory language requiring the Joint Committee on Employment Relations to "introduce in a bill . . . that portion of the tentative agreement which requires legislative action for implementation" governs the content of a bill: the statute clearly provides that a bill must contain that portion of the tentative agreement that requires legislative action, such as an amendment to existing law.

¶ 94. Section 111.92(1)(a) does not, however, specify in what way a bill must set forth that portion of the tentative agreement that requires legislative action. Section 111.92(1)(a) is silent on the method of including that portion of the tentative agreement in a bill.

¶ 95. The court of appeals in *Board of Regents v. Wisconsin Personnel Commission,* 103 Wis. 2d 545, 309 N.W.2d 366 (Ct. App. 1981), repeatedly refers to Wis. Stat. § 111.92(1)(a)[9] as setting forth a rule of legislative procedure, a method for legislative approval of a collec-

─────────────

[9] At the time the court of appeals decided the *Board of Regents* case, Wis. Stat. § 111.92(1)(a) was numbered as § 111.92(1).

491

tive bargaining agreement.[10] Nevertheless, the *Board of Regents* court of appeals treated Wis. Stat. § 111.92's procedural requirements as binding on the legislature. The court of appeals stated that if the legislature intends to change a law by ratifying a collective bargaining agreement, it must "comply with its own limiting approval procedure to effect this change."[11]

¶ 96. The *Board of Regents* decision is, however, not helpful in deciding the present case. The parties' briefs in *Board of Regents* did not address the applicability of Wis. Stat. § 111.92(1)(a).[12] No party argued that if Wis. Stat. § 111.92(1)(a) constitutes a rule of

---

[10] The *Board of Regents* court of appeals stated that in § 111.92(1), "[t]he legislature has chosen a method for approval of a collective bargaining agreement that assures it will be informed of intended changes in existing law, with the consequent opportunity to consider the merits of the changes in conjunction with its approval of the agreement. . . . The procedure avoids unfavored implied repeals or amendments, assures that specific legislative acts will control general acts, and also assures statutory harmony." *Board of Regents*, 103 Wis. 2d at 558.

In *Board of Regents* the legislature had ratified a collective bargaining agreement granting the Personnel Commission discretionary authority to review the discharge of probationary employees. This provision in the collective bargaining agreement conflicted with statutory provisions in Chapter 230 providing that a probationary employee had no right to appeal a discharge. The Joint Committee on Employment Relations had not introduced a bill containing that portion of the collective bargaining agreement that would amend or add to existing law by granting the Personnel Commission discretionary authority to review the discharge of probationary employees.

[11] *Board of Regents*, 103 Wis. 2d at 556. *See also id.* at 557–58.

[12] *See Board of Regents*, 103 Wis. 2d at 555 n.7.

492

legislative procedure, the statute is not binding on the legislature and will not be enforced by the courts. Nor did the court of appeals raise this issue sua sponte. The court of appeals showed no awareness of the potential conflict between its analysis and prior case law holding that the courts do not enforce legislative compliance with self-adopted rules of legislative procedure.[13]

¶ 97. It seems to me that the precise language to be inserted in the Act to satisfy the content requirement of § 111.92(1)(a) may be viewed as a rule of legislative proceeding for the legislature to determine. Why shouldn't the legislature (rather than a court) be able to decide whether exact language from the agreement must be reproduced in the bill? Or whether a reference to the article and section of the agreement is sufficient? Or whether a brief description of the portion of the agreement at issue is adequate? Cannot the legislature (rather than a court) also determine as a matter of procedure whether the statutory law to be modified by a collective bargaining agreement must be set forth in full (or described or identified by statutory number) in the bill? Why can't the legislature (rather than a court) determine that a reference to and incorporation of the entire collective bargaining agreement is sufficient to satisfy the content requirement under § 111.92(1)(a)?

¶ 98. Anyone reading the collective bargaining agreement in the present case would know that the agreement adopts an exception to the public records statute. Article 2/4/4 of the agreement ratified under 2003 Act 319 explicitly provides that "[n]otwithstand-

---

[13] To the extent that the *Board of Regents* decision may be viewed as implying that a court will invalidate legislation when the legislature has violated a procedural statutory provision, this implication must be disavowed.

ing the provisions of § 19.31–19.36 [the public records statute] . . . the Employer will not release any information relating to the names, addresses . . . of employees covered by this Agreement."

¶ 99. Although it may be argued that it is for the court to interpret Wis. Stat. § 111.92(1)(a) and to hold the legislature to the court's interpretation of the precise language needed to satisfy the content requirement of § 111.92(1)(a), there is also a good argument that in so interpreting and applying the statute the court would encroach upon the legislature's right to determine the rules of its own proceedings. Arguably, how the legislature must satisfy the content requirement of Wis. Stat. § 111.92(1)(a) and how the legislature must make clear its intent to ratify provisions in a collective bargaining agreement that modify existing law are questions of legislative procedure.

¶ 100. I acknowledge that there is no simple way of distinguishing in close cases between a rule of legislative proceeding and a rule relating to non-procedural matters under the Wisconsin constitution, and the instant case is a close case. When a legislative act does not violate a constitutional provision and there is a reasonable doubt about whether an applicable statute presents a rule of legislative proceeding, I must weigh the various interests involved.

¶ 101. As a member of the judicial branch, I am accustomed to the concept that the words of a statute should be followed and to the concept that fairness requires notice. I would also be more comfortable if the legislature spelled out exactly what statutes it intends to modify when ratifying a collective bargaining agreement. "Such a procedure is endowed with the virtue of avoidance of complex judicial and administrative statu-

tory construction designed to arrive at legislative intent, and minimizes the prospect of interpretive error."[14]

¶ 102. I am therefore persuaded that the public policy embodied in Wis. Stat. § 111.92(1)(a) governing the content of a bill ratifying a collective bargaining agreement is best served when the bill pinpoints the parts of a collective bargaining agreement that modify existing law. As the *Board of Regents* court of appeals recognized, § 111.92(1)(a) is designed to serve the important purpose of assuring that the legislature "will be informed of intended changes in existing law" and will have "the consequent opportunity to consider the merits of the changes in conjunction with its approval of [a collective bargaining] agreement"[15]

¶ 103. I am also persuaded that the legislature has made transparency in government a dominant public policy in this state. Wisconsin prides itself on open government proceedings and open public records. Sunshine is a great disinfectant.

¶ 104. These factors point to holding in favor of the newspapers' position.

¶ 105. Factors exist, however, pointing in the other direction as well. The legislature has used the same kind of language over several years to ratify collective bargaining agreements under Wis. Stat. § 111.92(1)(a). Thus the legislature apparently has concluded that § 111.92(1)(a)'s requirement about the content of a bill ratifying a collective bargaining agreement may be satisfied by a reference to the agreement as a whole.

---

[14] *Board of Regents,* 103 Wis. 2d at 558.

[15] *Board of Regents,* 103 Wis. 2d at 558.

¶ 106. The final factor is the weight to be accorded to each of the equal, coordinate three branches of government. Just as there are realms of exclusive judicial power into which the legislative and executive branches should not enter, so too are there realms of legislative power that are exclusively in the legislature's domain. The Wisconsin Constitution (and our case law) make clear that rules of legislative proceeding are the exclusive domain of the legislature.

¶ 107. In considering all these factors in this close case, I conclude that the balance tips in favor of holding that a court should refrain from interfering with the legislature in the present case under the doctrine of separation of powers embodied in the Wisconsin Constitution and the principle of comity. The legislature's adherence to rules or statutes prescribing legislative procedure (even those regarding the method for satisfying a statute regulating the content of a bill or act) is a matter entirely within legislative control and discretion, not subject to judicial review unless the legislative procedure is mandated by or violates the constitution.[16]

¶ 108. It is not the role of the court to sit in judgment of the legislature when the legislature's own rules of procedure are at issue and the constitution has not otherwise been violated. Respecting this limit on

---

[16] If a constitutional violation were involved, a court would interpret and apply the Act in accordance with the Constitution. Although the newspapers argue that the legislature has violated due process by not giving the public adequate notice of the contents of the Act, I am not persuaded by this argument, which has not generally been accepted by courts. A brief by an amicus also argues that the constitution has been violated by the legislature's singling out the press in the collective agreement, but this argument has not been advanced or discussed by any of the parties.

the court's authority, I conclude that 2003 Wisconsin Act 319 is valid in full, even insofar as it ratifies that portion of the collective bargaining agreement amending the public records law.

¶ 109. For the reasons set forth, I dissent.